IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 18, 2005

Charles R. Fulbruge III
Clerk

_____

No. 04-50527
_____

UNITED STATES OF AMERICA

                                            Plaintiff-Appellee

versus

SAMUEL SALDANA, JR

                                            Defendant-Appellant

_____

_____

No. 04-50591
_____

UNITED STATES OF AMERICA

                                            Plaintiff-Appellee

versus

SAUL SALDANA

                                            Defendant-Appellant

--------------------
Appeals from the United States District Court
for the Western District of Texas

--------------------

Before JONES, WIENER, and CLEMENT, Circuit Judges.

WIENER, Circuit Judge:

     Defendants-Appellants, twin brothers Samuel and Saul Saldana,

challenge their respective convictions for corruptly endeavoring to

impede the administration of Internal Revenue laws and for filing false statements. They also contend that the district court sentenced them in violation of their Sixth Amendment rights in light of the Supreme Court's recent United States v. Booker decision or, in the alternative, that the sentences imposed by the district court were unreasonable. Although the brothers were tried and sentenced separately, they moved successfully to have their cases consolidated on appeal. Following oral argument, we issued an order of limited remand regarding Samuel's sentence to allow the district court to provide written reasons for its upward departure in that sentence.[1] Having received and reviewed such written reasons from the district court, we now affirm both defendants' convictions and sentences.

## I. FACTS AND PROCEEDINGS

Samuel and Saul were indicted by a Grand Jury on one count each for corruptly endeavoring to obstruct and impede the due administration of Internal Revenue Laws in violation of 26 U.S.C. § 7212(a)("§ 7212"). Saul was indicted on twelve, and Samuel on sixteen, additional counts for filing false statements in violation of 18 U.S.C. § 1001(a)(3)("§ 1001"). The government charged the brothers with filing false tax reports regarding several individuals for the purpose of triggering Internal Revenue Service ("IRS") audits and thereby harassing and intimidating these

---

[1]See 18 U.S.C. § 3553(c).

2

individuals.  Different juries convicted each brother on all counts at separate trials before the same district judge.

The brothers were convicted for sending IRS Forms 8300 ("8300s"), "Report of Cash Payments over $10,000 Received in a Trade or Business,"[2] to the IRS, falsely stating that the defendants had paid or received cash payments to or from a number of individuals identified in such forms.  On the portion of the 8300s that request information regarding the amount of money exchanged by the filer with another party, the defendants either left the space blank or wrote $10,000 or filled in some astronomical figure such as $213 quintillion or $1,955,000,000,000,000.  None of the persons identified in these forms had ever received any money from, or given any money to, either defendant.  No one disputes that each brother engaged in the acts with which he was charged.  Rather, each trial centered on whether the defendant harbored the requisite intent "corruptly" to obstruct the administration of Internal Revenue laws.

Each of the individuals with whom, on the 8300s, Saul and Samuel claimed to have transacted was in some way connected with state or local government.  Most of the individuals targeted by Saul had never met him but (1) had written to him letters about his

---

[2] The IRS monitors large payments between businesses with 8300 forms; if a filer believes that the payment may not have been reported, he may check a box labeled "suspicious transaction."  If the box is checked, a form is sent to the individual named on the form requesting more information.  8300 forms are signed under penalty of perjury.

3

tax obligations, (2) had otherwise assessed fines or penalties for the government, or (3) were lawyers representing governmental entities that were seeking to assess fines, penalties or taxes against him. Samuel targeted judges and attorneys involved in proceedings against him or other public officials against whom he bore grudges.

Saul argues that he filed these 8300s in good faith, having learned about this tactic in a "tax course" that he attended with his fiancée, which course purported to inform those in attendance about a so-called "redemption" or "charge-back" process. This process purportedly permits individuals to redeem money from the government for a variety of nonsensical reasons, including that the government has an account for each citizen that is linked to the citizen's birth certificate.

Saul attempted to introduce into evidence "black manuals" that he claims to have received in this class and that explain this process. The trial court refused to allow the manuals into evidence, ruling that they were, alternatively, inadmissible hearsay, cumulative evidence, and would confuse the jury. Nevertheless, Saul testified to the jury that he relied on these manuals and generally described the "redemption process." An acquaintance of Saul's, Rick Garcia, testified that Saul advised him to file false 8300s against a judge presiding over Garcia's narcotics trafficking trial, as doing so would intimidate the judge and cause him to "back off" from Garcia's case.

4

At each trial, IRS Special Agent Jeff Allen testified that the defendants' actions cost the IRS several hundred hours of investigative manpower, requiring numerous levels of administrative review. At Samuel's trial, Allen testified additionally that Samuel was an anti-government tax protester who did not believe the IRS had jurisdiction over him and that, in filing the 8300s, Samuel sought to retaliate, intimidate, and harass the persons named in these forms. Allen stated that this is a common scheme used by anti-government protestors against public officials with whom the protestors have come into contact.

The targets of the false report forms testified at trial, stating that they had experienced various levels of concern, primarily about the possibility of an audit or, for many of the public officials, about their reputations if the public were to believe that they had received large sums of unreported income. None of the targeted persons was audited by the IRS or employed an attorney to defend them.

June Collerd, the mother of Samuel's children, testified that Samuel sent her an e-mail during a custody battle, advising that he would report her to the IRS, the Treasury Department, and six other federal agencies. Collerd stated that Samuel also told her that public officials involved in the custody case would "get theirs," that he was "going to get them," or that they would "pay for what they did to him."

The trial court sentenced Saul to a six month term of

5

imprisonment on each count, ordering (1) that he serve counts one through four consecutively with counts five through thirteen to run concurrently, for a total incarceration of twenty-four months, (2) that he remain on supervised release for three years, and (3) that he pay a $1,300 mandatory assessment. The court sentenced Samuel to consecutive ten-month terms of imprisonment on six counts, and concurrent terms of imprisonment on the remaining eleven counts, for a total of sixty months imprisonment. In addition, the court ordered Samuel to be placed on supervised release for a term of one year on count one and three years on counts two through seventeen, to run concurrently, for a total of three years supervised release. The court also imposed a mandatory assessment of $1,700.

In directly appealing his conviction, each defendant challenges the district court's interpretation of § 7212 and also challenges his sentence. Saul also appeals the court's refusal to allow his tax manuals into evidence.

## II. ANALYSIS

### A. 26 U.S.C. § 7212: Defining "Corruptly"

1. Standard of Review

As each brother makes an identical argument with respect to the first issue on appeal, we discuss their cases together. All parties characterize the defendants' first argument as a challenge to the sufficiency of the evidence, but it actually implicates the proper interpretation of § 7212(a), which prohibits

corruptly or by force or threats of force . . .

6

> endeavor[ing] to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force . . .obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of this title.

The brothers argue that the evidence did not support the jury's finding that either acted "corruptly" within the meaning of § 7212(a). They insist that our case law requires the government to show that the defendant sought an unfair benefit or advantage <u>under the tax laws</u> to prove that he acted with the requisite intent.

Although the government in its response frames the defendants' challenges as going to the sufficiency of the evidence to show that the brothers sought an unfair advantage or benefit without reference to the tax laws, the prosecution points out that, at Samuel's trial, the court instructed the jury — without defense objection — on the meaning of "corruptly:" "To act 'corruptly' means to act knowingly and dishonestly with the specific intent to secure an unlawful benefit either for oneself or for another." The record shows that an identical instruction was given to the jury in Saul's case, also without objection by the defendant.

Ordinarily, we review issues of statutory interpretation <u>de novo</u>.[3] In this case, however, neither defendant objected to the trial court's instructions to the jury defining "corruptly," so we

---

[3] <u>ADM/Growmark River Sys. v. Lowry</u>, 234 F.3d 881, 886 (5th Cir. 2000)

review that instruction for plain error.[4]  To prevail under this standard of review, a defendant must demonstrate "(1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously affect the fairness, integrity, or public reputation of judicial proceedings."[5]

2.  Jury Instructions

At the outset, we must determine whether the district court's instructions to the jury were erroneous.[6]  Defendants attempt to argue that the district court should have instructed the jury that "corruptly," as used in § 7212, means intentionally endeavoring to gain an advantage or benefit inconsistent with a person's rights and duties <u>under the tax laws</u>.  The Internal Revenue Code's criminal section does not define "corruptly,"[7] yet defendants assert that we have defined "corruptly" with this reference to the tax laws when evaluating § 7212.[8]  In so doing, defendants rely on

---

[4] <u>Russell v. Plano Bank & Trust</u>, 130 F.3d 715, 721 (5th Cir. 1997).

[5] <u>Id.</u>

[6] <u>Id.</u>

[7] Black's Law Dictionary defines "corruptly" as used in criminal-law statutes as "indicates a wrongful desire for pecuniary gain or other advantage." Black's Law Dictionary 371 (8th ed. 2004).

[8] <u>See</u> <u>United States v. Reeves</u>, 752 F.2d 995, 1001-1002 (5th Cir. 1985)("<u>Reeves</u> I").

8

<u>United States v. Reeves</u>[9] —— in actuality, two cases.

In <u>Reeves</u> I, we reversed the defendant's conviction for violating § 7212, holding that the district court had wrongly interpreted "corruptly" to mean "with improper motive or bad or evil purpose."[10] Defendants are correct in noting that we stated in <u>Reeves</u> I that "[t]he legislative history supports an interpretation of § 7212(a) as forbidding endeavors intended to give some advantage inconsistent with the rights and duties of others <u>under the tax laws</u>."[11] Defendants fail to mention, however, that, without any reference to the tax laws, we went on to state in the same paragraph that "[a]ccordingly, the legislative history of section 7212(a) supports interpreting its prohibition against 'corruptly' endeavoring to impede or obstruct Title 26 as forbidding those acts done with the intent to secure an unlawful benefit either for oneself or for another."[12] Even more significantly, our actual holding in <u>Reeves</u> I made no mention of benefits or advantages obtained under the tax laws: "We hold that the filing of frivolous common law liens with the intention of securing improper benefits or advantages for one's self or for

---

[9] 782 F.2d 1323 (5th Cir.), <u>cert denied</u>, 479 U.S. 837 (1986) (<u>Reeves</u> II), <u>citing</u> <u>Reeves I</u>, 752 F.2d 995, 1001-02 (5th Cir.), <u>cert. denied</u>, 474 U.S. 834 (1985).

[10] 752 F.2d 995, 998 (5th Cir. 1985).

[11] <u>Reeves</u> I, 752 F.2d at 1000 (emphasis added).

[12] <u>Id.</u> at 1001.

others constitutes a prohibited <u>corrupt</u> endeavor under section 7212(a)."[13] We remanded Reeves's case for a determination whether he had acted "corruptly" under this new definition.

When, in <u>Reeves</u> II, we heard the defendant's second appeal from conviction, we reiterated our earlier holding without reference to an improper benefit or advantage <u>under the tax laws</u>. Defendants' argument therefore rests on one statement in <u>Reeves</u> I that was not the holding and was not repeated anywhere else in either opinion.[14]

Other circuits, many citing <u>Reeves</u>, have also defined "corruptly" under § 7212 as meaning "to act with the intent to secure an unlawful advantage or benefit either for one's self or for another" without addressing whether the advantage or benefit is confined to benefits <u>under the tax laws</u>.[15] Although the advantages

---

[13] <u>Id.</u> at 1001-02 (emphasis added).

[14] One of our later opinions has re-stated the <u>Reeves</u> definition of "corruptly" without reference to the tax laws. <u>See</u> <u>United States v. Andersen</u>, 374 F.3d 281, 293-294 (5th Cir. 2004)(defining "corruptly" with respect to 18 U.S.C. § 1512(b): "In <u>United States v. Reeves</u>, for example, we defined the term to be an intent to "secure improper benefits or advantages for one's self or for others.").

[15] <u>See</u> <u>e.g.</u>, <u>United States v. Kelly</u>, 147 F.3d 172, 177 (2d Cir. 1998); <u>United States v. Wilson</u>, 118 F.3d 228, 234 (4th Cir. 1997) ("We have held that the term 'corruptly,' as used in [§ 7212] forbids acts committed with the intent to secure an unlawful benefit either for oneself or for another."); <u>United States v. Winchell</u>, 129 F.3d 1093, 1098 (10th Cir. 1997)("As used in this section, to act corruptly means to act with the intent to secure an unlawful benefit either for oneself or for another."); <u>United States v. Hanson</u>, 2 F.3d 942, 946 (9th Cir. 1993)(citing <u>Reeves</u> I, 752 F.2d at 998-99); <u>United States v. Popkin</u>, 943 F.2d

or benefits sought by the defendants in those cases were often related to manipulation of the tax laws, none of the decisions listed has relied on or emphasized this fact or included "under the tax laws" in their holdings. In fact, the Eighth and Sixth Circuits have upheld convictions under § 7212 when the defendants had not sought any advantage under the tax laws. The Eighth Circuit in United States v. Yagow noted only that the defendant sought a financial advantage, not an advantage under the tax laws, by filing fraudulent IRS forms.[16] In a case very similar to the instant one, United States v. Bowman, the Sixth Circuit affirmed a defendant's conviction for violation of § 7212(a) when the defendant had filed false 1099 and 1096 forms for the sole purpose of intimidating and harassing his creditors.[17] The Bowman court held that the defendant's conduct fell within the ambit of § 7212(a)'s proscribed conduct even though he sought no

---

1535, 1540 (11th Cir. 1991)("We agree with the definition adopted in Reeves. It comports with our view that 'corruptly' was used in § 7212(a), as in the general obstruction of justice statute, to prohibit all activities that seek to thwart the efforts of government officers and employees in executing the laws enacted by Congress.").

[16] 953 F.2d 423, 427 (8th Cir. 1992). The Yagow defendant sent fraudulent 1099 and 1096 forms to individuals involved in repossessing much of his property during a bankruptcy action and to individuals involved in a state prosecution against his son for alcohol possession; the defendant also submitted the forms to the IRS. Id. at 425-26.

[17] United States v. Bowman, 173 F.3d 595, 596-97 (6th Cir. 1999).

11

financial advantage or benefit for himself under the tax laws.[18]

In the context of these holdings by other circuits, the facts that (1) the Reeves holdings did not include under the tax laws, and (2) the language of the statute itself does not require that an individual intend to procure a benefit for himself under the tax laws to have formed the requisite mens rea, we hold that the district court did not err — certainly not plainly — in its jury instructions. We do not address whether a defendant must be seeking a financial advantage, as in Yagow,[19] or whether § 7212 is aimed at any behavior that seeks to thwart government efforts to execute tax laws, as the Eleventh Circuit has held,[20] because the defendants in this case sought to do both.[21]

---

[18] Id. at 600.

[19] 953 F.2d at 427.

[20] See Popkin, 943 F.2d at 1540.

[21] Defendants did not actually brief a colorable challenge to the sufficiency of the evidence but only challenged that the evidence did not support that they sought an unfair benefit or advantage under the tax laws — therefore we need not consider this argument on appeal. Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994)("A party who inadequately briefs an issue is considered to have abandoned the claim.")(citing Villanueva v. CNA Ins. Cos., 868 F.2d 684, 687 n. 5 (5th Cir. 1989)).
In any event, in light of our holding that "corruptly" does not include a requirement that the government prove that defendants sought such an advantage under the tax laws, there can be no doubt that defendants' convictions were supported by sufficient evidence, as a rational jury could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).

B.   Admission of Saul Saldana's "Tax Manuals"[22]

    1.   Standard of Review

We review the admission or exclusion of evidence for abuse of discretion.[23]   If we conclude that a district court has abused its discretion, we apply the harmless error doctrine.[24]   Accordingly, unless the trial court has abused its discretion and a substantial right of the defendant has been affected, we will not reverse on the basis of the evidentiary ruling in question.[25]

The government advances that we should review Saul's challenge to the district court's exclusion of the manuals for plain error, because he did not counter the government's hearsay objection at trial and raises his non-hearsay argument for the first time on appeal.[26]   Even if we assume _arguendo_ that the district court plainly erred when it excluded the manuals as hearsay, we conclude that the court did not abuse its discretion when it decided to exclude the manuals as cumulative and as potentially confusing to the jury.

    2.   Rule 403

---

[22] Samuel Saldana did not appeal this issue.

[23] _United States v. Powers_, 168 F.3d 741, 748 (5th Cir. 1999).

[24] _Id._

[25] _United States v. Asibor_, 109 F.3d 1023, 1032 (5th Cir. 1997).

[26] _See_ _Johnson v. United States_, 520 U.S. 461, 465-66 (1997).

13

Saul challenges the district court's decision to exclude the "black manuals" that he claims to have received in a tax class at which he purports to have learned about the "charge-back" or "redemption" process. Saul contends that his receipt of and reliance on these manuals demonstrate his good-faith belief and intent to use a valid legal process to discharge his property taxes and other public debts. The government counters that Saul and his girlfriend, Peggy Briggs, were allowed to testify without contradiction about the charge-back scheme, and that Saul also testified about his reliance on the manuals and their contents. The government states that the district court properly excluded the manuals both as hearsay and because the manuals' probative value was not outweighed by their potential to confuse the jury.

The manuals at issue are plastic three-ring binders containing a random assortment of Xerox copies of statutes, cases, printed-out e-mails, banking and credit card instructions, and various bizarre papers, such as a chart illustrating the "Diogenes Historical Society" contrast of "Our Creator's Law" and "Man's Legal System," a copy of the Communist Manifesto, a comic strip, and a description of the movie, The Matrix. There is no summary or obvious organization of the contents, but the binders do contain copies of IRS Forms 8300, suspicious activity reports, and instructions on something that looks similar to what Saul described as the charge-back process. The binders are labeled with a piece of paper on which "Redemption Process" is hand-written in felt-tip marker.

14

Rule 403 of the Federal Rules of Evidence ("FRE 403") permits a trial court to exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In this case, the manuals' probative value is slight: They are cumulative of Saul's unchallenged testimony that he relied on the tax class and these binders in implementing the redemption process.[27] Their appearance is so unprofessional and random that, if anything, they undermine Saul's arguments that he truly believed that he engaged in a legitimate legal process. The manuals' potential to confuse the jury, in contrast, was quite high. They contain inaccurate legal advice and an assortment of strange and unrelated documents that have nothing to do with taxes or with this case.[28]

---

[27] See United States v. Insaulgarat, 378 F.3d 456, 466 (5th Cir. 2004)(holding that, although the defendant argued that police reports would have boosted his credibility by demonstrating that he protested his innocence from the moment of arrest, the defendant himself testified to his statements at the time of his arrest and the police officer did not testify otherwise —— thus the evidence was cumulative and the district court did not abuse its discretion by excluding it).

[28] See United States v. Flitcraft, 803 F.2d 184, 186 (5th Cir. 1986)(holding that the district court did not abuse its discretion in excluding documents in a similar tax-protester case, in which the defendants claimed to have relied on case law and documents in making their decision not to pay federal income taxes, because the documents were needlessly cumulative and confusing to the jury, as the documents suggested that the law was unsettled).

The trial court did not abuse its discretion in excluding the manuals on the basis of FRE 403's balancing. Even if the manuals were not inadmissible hearsay, because their admittance was sought not for the truth of the matter asserted but to show the defendant's belief in the "redemption process,"[29] the district court exercised appropriate discretion when it decided that the probative value of the manuals did not outweigh their potential to confuse the jury.

C.   Sentencing Challenges

Samuel and Saul raise objections to their sentences under the Supreme Court's recent opinion in United States v. Booker,[30] contending that the district court increased their sentences beyond that authorized by the jury verdict. They argue that the court based their sentences on facts not proved to a jury or admitted by defendants, and did so while proceeding under a mandatory Guidelines regime, thereby violating defendants' Sixth Amendment rights. Additionally, Saul argues that the district court based its decisions to depart upwardly on impermissible factors. And, both defendants insist that the sentences imposed were unreasonable.

---

[29] United States v. Cantu, 876 F.2d 1134, 1137 (5th Cir. 1989)(holding that statements made by out-of-court declarant were not hearsay, because the defendant offered them as proof of his own state of mind, not as proof of the truth of the matter asserted).

[30] 125 S.Ct. 738 (2005).

16

1.   Standard of Review

Saul did not raise any Sixth Amendment argument or challenge the Sentencing Guidelines before the district court, so we review his Booker claim for plain error only.[31]  Samuel did preserve this objection before the district court, so we review his sentence for harmless error.[32]

Post-Booker challenges to a district court's interpretation and application of the Guidelines when imposing a Guidelines sentence are reviewed de novo.[33]  We therefore review de novo a district court's decision to depart upwardly and the acceptability of the reasons on which it relied in making that decision, because this implicates that court's interpretation and application of the Guidelines.  We review the extent of the departure, and the sentence as a whole, for reasonableness.[34]  We accept the district

---

[31] United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005).

[32] See id. at 520 n.9.

[33] United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005).  See also United States v. Doe, 398 F.3d 1254, 1257 n.5, 1259 (10th Cir. 2005) (reviewing, post-Booker, a district court's legal conclusions in support of its decision not to downwardly depart de novo.).

[34] Booker, 125 S.Ct. at 765.  Prior to enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act (the "PROTECT Act") in 2003, which changed the standard of review for upward departures to de novo, we also reviewed the extent of departures for reasonableness. See id. at 766; United States v. Andrews, 390 F.3d 840, 847 (5th Cir. 2004); United States v. Kay, 83 F.3d 98, 101 (5th Cir. 1996)(reviewing extent of departure for reasonableness).

court's finding of facts unless clearly erroneous and accord due deference to that court's application of the Guidelines to the facts.[35]

   2.   Saul Saldana

      a.   Sixth Amendment Challenge: Plain Error Review

It is clear, after Booker, that the district court committed plain error when it departed upward on Saul's sentence and did so based on facts not admitted by the defendant or found by the jury.[36] We hold, however, that Saul cannot show that such error affected his substantial rights. To meet the plain error standard, a defendant must show that a district court's error affected the outcome of the proceedings.[37] Saul cannot meet his burden to show that, if the district court had sentenced him under an advisory rather than mandatory sentencing guidelines system, it would have sentenced him differently. There is simply nothing in the record to indicate that the court would have decided differently had it not been bound by the Guidelines.[38] We therefore hold Saul's Booker

_____

[35] Kay, 83 F.3d at 101.

[36] See Mares, 402 F.3d at 520.

[37] Id. at 521.

[38] Id. In fact, we doubt whether a defendant could ever overcome plain error review of a claimed Booker violation in cases where the district court has upwardly departed. See United States v. Lee, 399 F.3d 864, 867 (7th Cir. 2005)("By moving up, the judge evinces not only a belief that discretion exists but also a disposition to exercise it adversely to the accused. Such a judge, knowing that Booker affords yet more latitude, might impose a sentence higher still; knowledge that freedom has

18

argument to be unavailing.

           b.    Upward Departure

    Saul also challenges the district court's upward departure, arguing that the court based its decision on impermissible factors and that the extent of the departure was unreasonable.  Saul's Pre-Sentence Investigative Report ("PSR") grouped all thirteen counts together in accordance with the grouping requirements in United States Sentencing Guidelines ("U.S.S.G.") § 3D1.2.  His base offense level for this group was calculated to be eight, including a two-level enhancement for obstruction of justice,[39] under U.S.S.G. § 2T1.1.[40]  The 1998 edition of the Guidelines was used to avoid <u>ex post facto</u> problems; his criminal history category was I.  Together with his base offense level, this yielded a prison sentence range of zero to six months, probation of one to five years, and supervised release for Count one of one year and counts two through thirteen of two to three years.  The district court ordered that the sentences for counts one through four run consecutively, for a total term of imprisonment of 24 months, with the remaining counts

_____

increased would not induce the judge to reduce the sentence.").

    [39] The PSR recommended, and the trial court adopted, a two-level enhancement under U.S.S.G. § 3C1.1 n. 4(e) because he willfully failed to appear as ordered for a judicial proceeding, specifically, his trial.

    [40] U.S. Sentencing Guideline § 2T1.1 (1998) provides a base offense level for crimes involving tax evasion, willful failure to file returns, supply information or pay tax; or filing fraudulent or false returns, statements, or other documents.

19

to be served concurrently; three years supervised release; and a $1300 mandatory fee assessment.[41]

Prior to Booker, a district court could upwardly depart under the Guidelines if "there exists an aggravating. . . circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines."[42] The Sentencing Commission intended for sentencing courts "to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes."[43] If the

_____

[41] The district court's decision to run sentences on four of Saul's 13 counts of conviction is an upward departure, as Saul's sentence of twenty-four months' imprisonment exceeded his total punishment authorized under the Guidelines, which was six months. A sentence exceeding the total punishment permitted under the Sentencing Guidelines, defined as the defendant's combined base offense level correlated with his appropriate criminal history category, includes an upward departure. United States v. Martinez, 274 F.3d 897, 903-04 (5th Cir. 2001). After it considers the factors listed under 18 U.S.C. § 3553(a), a district court has discretion under 18 U.S.C. § 3584 to depart upwardly by running sentences consecutively, even when U.S.S.G. § 5G1.2 would otherwise mandate that the sentences run concurrently. See United States v. Candelario-Cajero, 134 F.3d 1246, 1249 (5th Cir. 1998). Section 3553(a) requires consideration of, inter alia, the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the kinds of sentences and sentence ranges available under the guidelines; the Sentencing Guidelines' policy statements; and the need to avoid unwanted sentence disparities among defendants with similar records found guilty of similar conduct.

[42] 18 U.S.C. § 3553(b), excised by Booker, 125 S.Ct. at 764; Koon v. United States, 518 U.S. 81, 95-96 (1996); U.S. Sentencing Guideline § 5K2.0 (1998 ed).

[43] Koon, 518 U.S. at 93 (quoting U.S. Sentencing Guidelines Ch. 1 Pt. A(4), The Guideline's Resolution of Major Issues

20

court considered a factor in its decision to depart that the Guidelines either discouraged or had already included in some other way, the court could upwardly depart only "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."[44]

Although district courts are no longer bound by the Guidelines, they still must consider them, including the appropriate sentencing range, and state reasons for imposing a sentence outside that range.[45] A sentencing court's reasons for an upward departure are permissible if they (1) advance the objectives set forth in 18 U.S.C. § 3553(a)(2); (2) are authorized by 18 U.S.C. § 3553(b); and (3) are justified by the facts of the case.[46] A district court's reasons supporting its choice of a sentence must be included, with some specificity, in its <u>written</u> order of

---

(1998)).  <u>See also</u> <u>United States v. Winters</u>, 174 F.3d 478, 482 (5th Cir. 1999)("The Guidelines Manual explains that it intends each guideline to create a heartland of typical cases" and departure is appropriate only if conduct in a given case differs significantly from the norm and such that the crime is "outside this heartland.").

[44] <u>Koon</u>, 518 U.S. at 96.

[45] <u>Booker</u>, 125 S.Ct. at 767; <u>Mares</u>, 402 F.3d at 519.

[46] 18 U.S.C. § 3742(j)(1).  Although <u>Booker</u> excised § 3553(b), the directive to consider the heartland of an offense and enumerate particular reasons for a departure from the sentencing range lives on in U.S. Sentencing Guideline § 5K2.0 and, implicitly, in § 3553(a)'s requirement that the court consider the guidelines and the appropriate sentencing range and § 3553(c)'s requirement that the court enumerate reasons for sentencing without the range.

judgment or commitment under 18 U.S.C. § 3553(c).[47]

At Saul's sentencing hearing, the district court orally explained its reasons for departing as the harm done by the defendant, his disrespect for the law, the fear he caused, and the number of times that he committed the crime. The court went on to say that Saul was "involved in legal processes in which he caused the stop of those legal processes, not just on one occasion, but on 13 separate occasions." In contrast, the court's written statement of reasons said only that it upwardly departed because the Sentencing Commission had not adequately addressed the harm caused when the offense occurs on multiple counts, and because Saul, by his conduct, caused "legal stoppage."[48]

Saul argues that a district court may not upwardly depart based on the number of counts of conviction, because the Guidelines specify a method for calculating an offense level for defendants convicted on several counts related to similar activity.[49]   He

---

[47] Mares, 402 F.3d at 519 n.8.

[48] We have expressed doubt whether, under 18 U.S.C. § 3742, we could consider a district court's spoken reasons for making an upward departure when they differ from the court's written reasons, at least with respect to the reasonableness of the extent of the departure. United States v. Andrews, 390 F.3d 840, 847 (5th Cir. 2004). Booker excised subsection (e) of § 3742, however, the requirement that a district court write down its reason for imposing a departure from the guidelines range remains binding. 18 U.S.C. § 3553(c). In this case, the district court's written reasons for its departure, though terse, do not contradict its spoken reasons.

[49] See U.S. Sentencing Guidelines § 3(D), intro., which provides that "convictions on multiple counts do not result in a

cites <u>United States v. Miller</u>, in which we held that "[t]he mere fact that defendant's commission of crimes in separate jurisdictions exposed him to separate prosecutions (and thus possibly a longer sentence) is not, in our view, a sufficient reason for a departure."[50]

Although, in Chapters 3 and 5, the Sentencing Guidelines do address how district courts should sentence defendants convicted for multiple counts, the comments to U.S.S.G. § 3D1.4 also make clear that district courts may depart from those requirements in unusual circumstances: "Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional crimes are likely to be unusual and can be handled by departure from the guidelines." Further, the Guidelines' Policy Statement explains the multiple counts grouping requirement as necessary to prevent arbitrary casting of a single transaction into several counts to produce a longer sentence: A defendant who engages in conduct or a single course of conduct that causes several harms does not necessarily merit punishment proportionately increased with each additional harm.[51] The Policy Statement describes two situations in which grouping is appropriate and describes how the offense level may be fairly calculated: "(1) when

_____

sentence enhancement unless they represent additional conduct not otherwise accounted for by the guidelines."

[50] <u>See</u> 903 F.2d 341, 350-51 (5th Cir. 1990).

[51] U.S. Sentencing Guidelines Ch. 1 P. A(4) (1998).

23

the conduct involves fungible items (e.g., separate drug transactions or thefts of money), the amounts are added and the guidelines apply to the total amount; (2) when nonfungible harms are involved, the offense level for the most serious count is increased (according to a diminishing scale) to reflect the existence of other counts of conviction."[52]

In the ordinary case, a district court may adjust an offense level upward under U.S.S.G. §§ 3D1.3 and 3D1.4 for multiple count convictions, to account for the greater harm; however, no such adjustment was available in this case.[53] An upward departure based on multiple counts in this case does not, moreover, subvert the Guidelines' policy reasons for the grouping rules, as such a result does not "arbitrarily" cast a single transaction into several counts. When a defendant like Saul has been convicted of as many as thirteen separate counts, and the grouping rules of the Guidelines do not permit for any sort of enhancement in a defendant's punishment based on the harm or number of counts included, it is permissible for a district court to depart upwardly

[52] Id.

[53] U.S.S.G. § 3D1.3(b), applicable to counts grouped together pursuant to § 3D1.2(d), which includes counts of conviction under § 2T1.1, provides that the offense level corresponds to the aggregated quantity determined in accordance with Chapter 2 (which includes aggregation for the amount of loss caused by the defendant) and Chapter 3 (which permits adjustments for a number of reasons that do not apply in this case). U.S. Sentencing Guideline § 3D1.3(b)(1998).

24

on this basis.[54]

Saul also argues that the Guidelines have already taken into account the possibility that filing false tax forms could cause aggravation and harm. U.S.S.G. § 2T1.1 — the section that contains the base offense level for § 7212 and under which Saul was sentenced —  is primarily concerned with tax evasion. It relies on the loss or intended loss caused by a defendant's conduct to establish the true base offense level to reflect the amount of harm.[55] U.S.S.G. § 2T1.1 plainly does not account for harm caused by a tax protestor who not only impedes the IRS's ability to function but also uses the IRS as an "attack dog" to harass other individuals; neither does it anticipate that the tax protestor will file false forms in an attempt to stop legal proceedings against him.[56] Saul's victims suffered a greater degree of harm than is

---

[54] In fact, the Sixth Circuit has affirmed a district court's decision to depart upwardly based on the number of false 8300 forms filed by defendants in a case very similar to the instant one, in which the defendants had been convicted of sending approximately a dozen forms each to the IRS and government officials. United States v. Anderson, 353 F.3d 490, 509 (6th Cir. 2003).

[55] See U.S. Sentencing Guidelines § 2T1.1, Background, 1998 ed. ("This guideline relies most heavily on the amount of loss that was the object of the offense.")

[56] See United States v. Heckman, 30 F.3d 738, 741-42 (6th Cir. 1994)(upholding upward departure after defendant was sentenced in conformity with U.S.S.G. § 2T1.3 (later consolidated with § 2T1.1), which contemplated tax evasion, because the defendant also attempted to impede the IRS in its collection of revenue from other taxpayers and its measurement of taxpayer compliance, and to harass individuals whose accounts the IRS scrutinized).

25

typically involved in a false tax form case, so this factor was an appropriate one for the sentencer to consider under § 5K2.0.

We conclude that the district court's orally stated reasons for upwardly departing were acceptable, as they address § 3553(a)'s directive to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and represent aggravating circumstances that take Saul's conviction "out of the heartland" of § 2T1.1. The district court properly relied on evidence presented at trial and in the PSR in making its factual determinations, namely, the number of counts and the fact that Saul's behavior caused greater aggravation and harm than the typical defendant sentenced under U.S.S.G. § 2T1.1, were not clearly erroneous.[57]

We still must determine, however, whether the degree or extent of the departure or the sentence as a whole was unreasonable.[58] The district court did not rely on any impermissible factors in making its decision to depart upwardly, and we have held that, in such cases, we owe great deference to the sentence imposed by the district court.[59] The Supreme Court instructs us to measure the

---

[57] See United States v. Lara, 975 F.2d 1120, 1124 (5th Cir. 1992)("A sentencing court may rely upon relevant information contained in the PSI [Pre-Sentence Investigation Report] in fashioning its upward departure.")(citation omitted).

[58] Booker v. United States, 125 S.Ct. 738, 765 (2005); United States v. Kay, 83 F.3d 98, 101 (5th Cir. 1996).

[59] Mares, 402 F.3d at 520 ("If the sentencing judge follows the principles set forth above, commits no legal error in the

26

reasonableness of a sentence against the policy and justifications for the Guidelines as set forth in 18 U.S.C. § 3553(a).[60]  It also likened our post-Booker reasonableness inquiry to the standard of review for upward departures that existed before enactment of the PROTECT Act in 2003.[61]  To that end, we evaluate Saul's sentence, including his upward departure, for conformity with the factors listed in 18 U.S.C. § 3553(a) and in accordance with our pre-2003 case law in which we evaluated the reasonableness of upward departures.

At the outset, we note that, by running four six-month sentences consecutively, the district court quadrupled the maximum sentence allowable for Saul under the Guidelines, the equivalent of a seven-level departure.  "While the mere fact that a departure sentence exceeds by several times the guideline maximum is of no independent consequence in determining whether the sentence is reasonable, it may indicate the unreasonableness of the departure viewed against the court's justification for that departure."[62]  Even though, in this case, we concur with the district court's decision to depart above the Guidelines, we conclude that the

---

procedure followed in arriving at the sentence, and gives appropriate reasons for her sentence, we will give great deference to that sentence.").

    [60] Booker, 125 S.Ct. at 765-66.

    [61] Id. at 765.

    [62] United States v. Campbell, 878 F.2d 164, 166 (5th Cir. 1989)(citation omitted).

27

extent of that departure approaches the outer boundary of reasonableness.

First, the degree of departure appears to overstate the harm produced by Saul's acts. Several victims testified that they were inconvenienced by receipt of these forms, and some feared an audit by the IRS, yet none testified to experiencing any significant disruption to their daily lives or to having any audits actually initiated.[63] As for the harm done to the IRS, i.e., having to investigate the accusations contained in the false forms sent by Saul, no evidence suggests that the number of hours spent by the agency on these probes exceeded the amount of time that it would normally spend investigating false forms. Further, Saul sent a total of only twelve forms, affecting a total of only six individuals. Although the number of counts in this case might also have justified a greater sentence, we are not convinced that this number justifies multiplying a sentence to a point four times beyond the maximum under the Guidelines range.

We also note that, even though the district court was required

---

[63] In comparison, when the Sixth Circuit approved a district court's upward departure on a defendant's sentence after the defendant filed false 1096 and 1099 forms for the purpose of harassing other individuals, as well as an outrageous refund claim for himself, the aggravation caused to the individuals was far worse. United States v. Heckman, 30 F.3d 738, 741-42 (6th Cir. 1994). For example, victims testified that the defendant had demanded payment from them based on false deeds of trust and other liens against their property and that they had been forced to hire lawyers or accountants to defend themselves against the IRS; additionally, the defendant had sent the victims harassing letters. Id. at 742.

28

to consider whether "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" before upwardly departing,[64] it did not do so.[65] Saul cites numerous cases in which individuals convicted of sending false tax forms to the IRS under circumstances similar to those in his case, and in many instances sending far more forms and causing more trouble to the IRS and to their victims, received shorter sentences.[66]

Despite our misgivings about the length of this sentence, however, we are unwilling to hold that it is unreasonable. The sentence does overstate the degree of harm, does not appear to advance the goal of uniformity, and does over-compensate for the number of counts, but each of these was a permissible reason for the district court to depart from the Guidelines' range and, taken together, would likely justify a sentence at least within striking

_____

[64] 18 U.S.C. § 3553(a)(6).

[65] See also 28 U.S.C. § 991(b)(1)(B) (stating that one purpose of the U.S. Sentencing Commission is to avoid unwarranted sentencing disparities among defendants with similar records found guilty of similar criminal conduct).

[66] See, e.g., United States v. Yagow, 953 F.2d 423 (8th Cir. 1992)(sentencing the defendant to six months' imprisonment for sending 180 false 1099 forms to more than 100 individuals and institutions); United States v. Kuball, 976 F.2d 529, 530 (9th Cir. 1992)(sentencing the defendant to six months' imprisonment for filing false 1099 information returns to eight persons and a false 1040 that fraudulently claimed a refund of over $600,000); United States v. Citrowske, 951 F.2d 899, 900 (8th Cir. 1991)(sentencing the defendant to four months' imprisonment for filing more than fifty false 1099 tax return forms).

29

distance of that imposed by the district court. Given the deference we owe to a district court that has properly applied the Guidelines, we decline to hold the degree of the departure unreasonable. We therefore affirm Saul's sentence.

3.   Samuel Saldana

a.   <u>Sixth Amendment Challenge</u>

It is true that Samuel preserved his <u>Booker</u> challenge to the district court's decision to depart upward by citing <u>Blakely</u> at his sentencing hearing, mandating that we review his challenge for harmless error.[67] This case presents one of those rare circumstances, however, in which we hold that a defendant who has preserved <u>Booker</u> error is nonetheless not entitled to vacatur and remand of his sentence on this ground. As we stated in <u>Mares</u>, we will ordinarily vacate a defendant's sentence when (1) he has preserved an objection to a <u>Booker</u> Sixth Amendment violation, and (2) we find error that is not harmless.[68] Rule 52(a) of the Federal

---

[67] After the trial court had sentenced Samuel, his attorney stated: "I just need to make sure for purposes of the record that the Court is taking recognition of Mr. Saldana's objection to the departure under the guidelines under the reliance on <u>Blakely</u>." Although this objection is less than crystal clear, we hold that a defendant's invocation of <u>Blakely</u> without further explanation is sufficient to preserve <u>Booker</u> error on appeal. <u>See</u> <u>United States v. Dowling</u>, 403 F.3d 1242, 1245-47 (11th Cir. 2005)(holding that, in order to preserve a <u>Booker</u> objection, a defendant must make a "constitutional" objection at sentencing, which may include citing <u>Apprendi</u>, the Sixth Amendment, or the defendant's right to have facts found by a jury instead of a judge).

[68] <u>Mares</u>, 402 F.3d at 520 n.9.

Rules of Criminal Procedure provides that a harmless error is "any error, defect, irregularity or variance that does not affect substantial rights" and such error "must be disregarded." Stated differently, before vacating a defendant's sentence, we must determine whether such an error is harmless beyond a reasonable doubt.[69] Under our harmless error analysis, the <u>government</u> bears the burden of persuading us, beyond a reasonable doubt, that an error did <u>not</u> affect the defendant's substantial rights.[70]

When the district court departed upwardly under the Guidelines, based on facts not found by a jury or admitted by the defendant, it plainly erred.[71] Yet in this instance the government has demonstrated that this error is harmless.[72] During Samuel's

---

[69] <u>Neder v. United States</u>, 527 U.S. 1, 15 (1999).

[70] <u>Id.</u>; <u>United States v. Olano</u>, 507 U.S. 725, 734 (1993)(noting that, unlike harmless error analysis, in which the government bears the burden of showing no prejudice to the defendant's rights, plain error analysis places this burden on the defendant); <u>United States v. Wheeler</u>, 322 F.3d 823, 828 (5th Cir. 2003)("Unlike the harmless error analysis, it is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.")(citing <u>Olano</u>, 507 U.S. at 734).

[71] <u>See</u> <u>Mares</u>, 402 F.3d at 520-21.

[72] Neither party included any arguments or specifics relating to this <u>Booker</u> issue in their briefs, as <u>Booker</u> had not yet been decided at the time of this appeal. Instead, Samuel stated merely that he wished to preserve any arguments he might make challenging the Guidelines under <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), and the government noted that such arguments were foreclosed by our decision in <u>United States v. Pineiro</u>, 377 F.3d 464 (5th Cir. 2004), vacated and remanded by <u>Pineiro v. United States</u>, 125 S.Ct. 1003 (2005). At oral argument, however, the government argued that any <u>Booker</u> error was harmless for the

31

sentencing hearing, the judge stated that, in the event that the Booker decision should hold the federal sentencing guidelines unconstitutional, the court would sentence him to the same amount of imprisonment and supervised release permitted under the substantive statutes. For an error to have affected substantial rights, "it means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings."[73] It is obvious to us that the error committed by the district court in this case did not affect the outcome of the sentencing proceedings, so any error committed by the district court was harmless.[74]

     b.   Upward Departure[75]

The district court sentenced Samuel in the same manner that it sentenced Saul, the only difference being that Samuel's criminal history category was II,[76] yielding a greater Guidelines range of four to ten months on the grouped counts. Count one, violation of

reasons that we adopt in this opinion.

[73] United States v. Olano, 507 U.S. 725, 734 (1993).

[74] See United States v. Thompson, 403 F.3d 533, 535-36 (8th Cir. 2005)(holding any Booker error to be harmless because the district court expressly sentenced the defendant to an alternate, statutory-based sentence in the event that Booker ruled the Guidelines unconstitutional).

[75] We will not repeat our discussion of the upward departure analysis here.

[76] Samuel also failed to appear for jury selection at his trial and received a two-level enhancement for obstruction of justice under U.S.S.G § 3C1.1 n.4(e) (1998).

32

§ 7212, carried a statutory maximum of three years imprisonment and one year supervised release; counts two through seventeen, violations of § 1001(a)(3), each carried a statutory maximum of five years imprisonment and three years supervised release. As noted above, the district court sentenced Samuel to the statutory maximum of five years imprisonment.

The district court departed upwardly on Samuel's sentence because it found that there were aggravating circumstances of a kind and to a degree that were not adequately considered by the Sentencing Commission. Specifically, the district court explained in its written reasons that Samuel filed the false 8300s as a weapon against numerous public officials for daring to perform their public duties. As noted above, however, the Guideline under which Samuel was sentenced focuses primarily on filing false returns or claiming fraudulent deductions — not on using the IRS as a personal "attack dog." Moreover, the district court found that the Guideline did not adequately take the number of victims into account — in Samuel's case, there were seven. The court emphasized at the sentencing hearing, and confirmed in writing, that Samuel had committed the crime on sixteen separate occasions, and ultimately concluded that without "an adequate sentence, the Defendant will not be deterred and will continue his unlawful activities."

The district court's reasons for its upward departure were acceptable — indeed, deterrence, promoting respect for the law,

33

and the seriousness of the offense were factors that the court was required to consider under 18 U.S.C. § 3553(a).  And, Samuel does not challenge the <u>validity</u> of the court's reasons for its upward departure.  Rather, he contends that the <u>extent</u> of the departure is unreasonable, insisting that his sentence of 60 months' imprisonment is disproportionately long in comparison to sentences imposed in similar cases of defendants using fraudulent IRS forms to harass individuals.[77]  He also urges that the facts of his case do not support a sentence of five years, which is six times longer than the maximum sentence under the applicable sentencing range on any count of conviction if all are served concurrently.

At the outset, we again acknowledge that the extent of the

---

[77] <u>See</u>, <u>infra</u> note 64.  <u>See also</u> <u>United States v. Bowman</u>, 173 F.3d 595, 596-97 (6th Cir. 1999)(upholding defendant's sentence of thirty-three months' imprisonment for sending 59 fraudulent 1099 and 1096 forms to individuals, institutions, and the IRS in retaliation for suits, foreclosures, and other judgments brought against him); <u>United States v. Heckman</u>, 30 F.3d 738, 743 (6th Cir. 1994)(upholding twenty-four month sentence, including a fourteen-month upward departure, when defendant filed at least seventy-nine false 1099 Forms in an attempt to harass victims, demanded payment from victims for false liens he had filed against their property, and caused the victims to hire attorneys and accountants to defend themselves against the IRS); <u>United States v. Hanson</u>, 2 F.3d 942, 944-46 (9th Cir. 1993)(vacating and remanding defendant's 12-month sentence for filing four false 1096 and 1099 forms claiming that he had received $46,996,669.41 from three FHA officials and $31,331,112.94 from two other FHA employees because the proper Guidelines range was one to six months, not twelve months); <u>United States v. Parsons</u>, 967 F.2d 452, 453 (10th Cir. 1992)(noting that defendant who had filed thirteen false 1099 forms and made demands to recipients that they pay him the amounts specified in the forms had received six months' incarceration).

departure here comes close to the outer limits of reasonableness. First, the degree of the departure overstates the harm done to the victims. Specifically, most victims testified to experiencing only some annoyance and trepidation at the thought of an IRS investigation, and their greatest inconveniences were contacting the IRS or FBI and filling out forms. Second, Samuel's sentence is significantly longer than those imposed in similar "tax protestor" cases. We note, however, that — as in Saul's case — the district court's reasons for upwardly departing are valid and, taken together, clearly justify a sentence of the length of the one actually imposed by the district court. Given the deference we owe to the district court, we will not overturn the extent of the upward departure here as unreasonable.

### III. CONCLUSION

We affirm both defendants' convictions: (1) The district court did not err when it instructed the jury on the meaning of "corruptly;" (2) both defendants' convictions are supported by sufficient evidence; and (3) the court did not abuse its discretion when it refused to admit the tax manuals into evidence at Saul's trial, as these manuals were cumulative, confusing, and had little probative value. We also affirm both defendants' sentences: Neither has successfully stated a claim under United States v. Booker, and the district court did not exceed the limits of reasonableness in any aspect of its sentencing methodology. The Saldana brothers' convictions and sentences are, in all respects,

35

AFFIRMED.