United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 9, 2006**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

————————

No. 05-51002

————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FADI EL-KAREH,

Defendant-Appellant.

————————————————————————

Appeal from the United States District Court
for the Western District of Texas
No. 5:04-CR-245

————————————————————————

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The defendant appeals his sentence, alleging that the district court improperly applied an

upward departure to the properly calculated guideline range. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

In January 2004, the Bandera County Sheriff's Office received a call for assistance at a

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

property owned by Clair Richard Hershey. The call was from Hershey's daughter, who had returned home from an extended trip to find a new padlock on the front gate of the property, strangers (to her) living in the main house, and Hershey living in a small trailer against a dilapidated barn behind the house. A police investigator arrived and found Hershey living in squalor: trash covered every surface and the toilet was not attached to sewer drainage. Hershey, too, was not in the best shape; he appeared delirious and was covered in filth. Eventually, Hershey indicated that he wanted to return to his house on the property, rather than live in the trailer. The police investigator announced himself at the main house; Fadi El-Kareh opened the door. Though admittedly the investigator did not understand how Hershey had come to live in the trailer instead of his own house, the investigator ordered El-Kareh, along with his wife and children, off the property. El-Kareh complied shortly thereafter.

Upon further investigation, local and federal investigators discovered that a substantial sum of money had been drained from Hershey's Navy Federal Credit Union bank account over the preceding year. Eventually, El-Kareh confessed to using Hershey's ATM card for the prior year, withdrawing $400 per day and spending the entire sum on lottery tickets and cocaine. As well, at one point, El-Kareh had lost Hershey's debit card, and successfully had posed as Hershey to obtain a new one.

Pursuant to a written agreement, El-Kareh pleaded guilty to one count of access device fraud under 18 U.S.C. § 1029(a)(5). As part of his plea agreement, he stipulated to facts justifying certain United States Sentencing Guideline ("U.S.S.G.") offense level adjustments, including intentionally selecting a vulnerable victim, under § 3A1.1(b)(1), and relevant conduct involving a loss of $123,000, under § 2B1.1(b)(1)(F). After an offense level reduction due to El-Kareh's acceptance of

responsibility, the district court properly calculated the guideline range at twenty-four to thirty months.

El-Kareh was sentenced after *United States v. Booker*, 543 U.S. 220 (2005), made the guidelines advisory. The district court, fully aware of its newly-established discretion, found that the Sentencing Commission, in devising the advisory guideline range, could not have contemplated El-Kareh's egregious conduct. Accordingly, the district court sentenced El-Kareh to forty-eight months imprisonment, "four months for each month of the crime being committed."[1]

## II. STANDARD OF REVIEW

After *Booker*, the most common method by which district courts have imposed a sentence outside the properly calculated guideline range is by use of a variance. In this way, the district court recognizes and considers the guidelines, yet chooses in its discretion to disregard their strictures. *See United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). Another method existed prior to *Booker* and is still permissible: a district court can apply a guideline-prescribed departure. *Id.* Here, the district court chose the latter method.[2]

"After *Booker*, this court continues to review a district court's interpretation and application

---

[1]The district court also sentenced El-Kareh to three years of supervision following release from incarceration and ordered him to pay restitution of $123,000. Further, the district court recommended that El-Kareh be given the opportunity to participate in an intensive drug rehabilitation program while in prison.

[2]There are some indications in the district court's oral comments at El-Kareh's sentencing hearing that the district court intended to vary, rather than depart, from the guideline range. However, in its statutorily required written reasons, *see* 18 U.S.C. § 3553(c)(2), the district court made clear that it was departing, rather than varying, from the guidelines: "The Court considered the sentencing guidelines in an advisory capacity and departs from the guideline range for reasons authorized by the sentencing guidelines." The district court continued: "The sentence departs *above the guideline range* for the following reason(s): . . . 5K2.4 Abduction or Unlawful Restraint; 5K2.8 Extreme Conduct."

of the guidelines de novo and its findings of fact for clear error." *United States v. Caldwell*, 448 F.3d 287, 289 (5th Cir. 2006). We review for abuse of discretion both the district court's decision to depart and the extent of the departure. *Smith*, 440 F.3d at 707; *United States v. Saldana*, 427 F.3d 298, 308 (5th Cir. 2005). A district court does not abuse its discretion in upwardly departing if its reasons "(1) advance the objectives set forth in 18 U.S.C § 3553(a)(2); (2) are authorized by 18 U.S.C. § 3553(b); and (3) are justified by the facts of the case."[3] *Saldana*, 427 F.3d at 310. *See also United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006) (quoting *Saldana*).

### III. DISCUSSION

Granting a government motion, the district court premised its decision to upwardly depart on two guideline departure sections, § 5K2.4 ("Abduction or Unlawful Restraint") and § 5K2.8 ("Extreme Conduct"). Regarding the first of the three *Saldana* factors, requiring the district court's reasons to further the objectives of 18 U.S.C. § 3553(a)(2),[4] the district court's written reasons for departure are sparse. Therefore, we turn for detail to the district court's statements at the sentencing

---

[3]*Booker* excised 18 U.S.C. § 3553(b), but that subsection's "directive to consider the heartland of an offense and enumerate particular reasons for a departure from the sentencing range lives on in . . . [U.S.S.G.] § 5K2.0 and, implicitly, in § 3553(a) . . . and § 3553(c) . . . ." *Saldana*, 427 F.3d at 310 n.46. *See also United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006) (quoting *Saldana*).

[4]18 U.S.C. § 3553(a)(2) requires the district court to assess

the need for the sentence imposed—
(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

hearing. *See, e.g.*, *United States v. Jones*, 444 F.3d 430, 434 (5th Cir. 2006); *Saldana*, 427 F.3d at 310. There, the district court orally explained its reasons for departing from the guidelines:

> I find that the duration of this crime and the lack of concern about the physical and mental well-being of this 80-year-old victim, and to the extent one wants to use the term eccentric as opposed to incompetent, nevertheless, whatever descriptor one wants to use, Mr. El-Kareh took advantage of the situation to satisfy his own addictive impulses . . . .[5]

As well, we look for additional factual findings to the Pre-Sentence Report ("PSR"), which the district court expressly adopted. The PSR shows that Hershey wanted to live in his own house instead of the mobile home but was unable to do so without the aid of police. Also, access to and from the property was prevented by a padlock controlled by El-Kareh. The PSR additionally suggested that the district court could upwardly depart based on El-Kareh's cruel and degrading conduct to the victim; the district court adopted this rationale.[6]

We hold that the district court's reasons advance the objectives of 18 U.S.C. § 3353(a)(2). The stated reasons show that the district court considered the need for the ultimate sentence to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence to criminal conduct. The reasons also identify that the district court considered the need to protect the

---

[5]The district court elaborated:
> So I came out here intending to do a lot more than I'm going to do because there are two sides to this story in terms of the—whether [Hershey] was there against his will and the lack of sanitation and so forth. . . .
> On the other hand, to the extent that he began to decline, I think there is some obligation from you all to try to help him do something, [and] so forth. But in the fog of your drug use you weren't aware of it or able to do anything. So it's all connected.

[6]El-Kareh points to certain passages in the record wherein the district court indicated that El-Kareh was not in "a caregiver position of trust during the indictment time" and that Hershey "had established a track record of slovenliness" on his own before the time charged in the indictment. We are unconvinced that any ambiguity in the district court's prior remarks affects the propriety of its expressly stated reasons.

public from El-Kareh's future conduct. Finally, the reasons do not cause the district court to overlook El-Kareh's offender-specific problems, namely his drug problem; the district court's sentence included a recommendation that El-Kareh be permitted to participate in an intensive drug rehabilitation program.

It also is clear that the district court's reasons authorize departure in the spirit of § 3553(b), per the second *Saldana* requirement. As the district court explicitly stated, in its view, the Sentencing Commission, in devising the applicable guideline range, could not have "contemplated this kind of series of events and crimes." The district court recognized and considered the guidelines and implicitly concluded that El-Kareh's crime fell "outside the heartland of cases in the Guideline." *United States v. Koon*, 518 U.S. 81, 98 (1996).

Finally, we consider the third *Saldana* requirement, whether the district court's decision to depart is justified by the facts. While the statute of conviction punished El-Kareh for access device fraud, it is clear from the record that El-Kareh's conduct covered far more than, as the district court stated, "a relatively plain vanilla ATM crime." The duration of the crime and El-Kareh's general conduct toward Hershey support the district court's findings of unlawful restraint and extreme conduct warranting departure. In order to indulge his addictions, over the course of one year El-Kareh stole $400 per day from an elderly man, who lived—without benefit of unfettered choice—in squalor in plain sight of the defendant. While the stipulated adjustments accounted for some of El-Kareh's conduct, § 5K2.0(a)(2) and (3) allow the district court to depart further if those enhancements do not fully capture the defendant's conduct.[7] When considering the entire situation

---

[7]For instance, duration alone is grounds for finding extreme conduct under the specific circumstances of this case. *See United States v. Barakett*, 994 F.2d 1107, 1112–13 (5th Cir. 1993).

underlying the criminal conduct, we cannot say that the district court abused its discretion in determining that these facts amounted to unlawful restraint or extreme conduct.

Though we have determined that the district court did not abuse its discretion in *deciding* to depart, we must now determine whether the district court abused its discretion in the *extent* of the departure. We rely on the same reasons as above to conclude that the extent of the departure was reasonable under the circumstances. *See Jones*, 444 F.3d at 442 ("The same factors that lead us to conclude that a departure was not unreasonable also lead us to conclude that the extent of the departure was not unreasonable."). The upward departure added eighteen months to the top of the properly calculated guideline range, which is the equivalent of adding five points to the offense level. Our caselaw makes clear that such a departure is not *per se* unreasonable. *See Zuniga-Peralta*, 442 F.3d at 348; *United States v. Simkanin*, 420 F.3d 397, 419 (5th Cir. 2005). Nor do we find it unreasonable as applied to the facts before us.

## IV. CONCLUSION

Finding no error, we AFFIRM the district court's guideline departure.