**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel W. BLAKE, Defendant–Appellant.**

No. 96–3627.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1997.

Decided July 3, 1997.

Robert A. Anderson (argued), Office of the United States Attorney, Madison, WI, for plaintiff–appellee.

Keith J. Peterson, Superior, WI, for defendant–appellant.

Before CUDAHY, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Armed with a warrant, police searched Daniel Blake's home and found more than 40 grams of a methamphetamine mixture packaged for distribution. His stock in trade was tested and found to be 79 percent drug and 21 percent cut. Blake therefore possessed more than 10 grams of methamphetamine, but less than 100 grams of a methamphetamine mixture. This leads to his principal argument on appeal: that he does not qualify for the five-year minimum sentence applicable to anyone who possesses "10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers". 21 U.S.C. § 841(b)(1)(B)(viii). Blake contends that he did not possess more than 10 grams of methamphetamine because that drug was mixed with inert substances—but not enough of them to yield more than 100 grams of mixture. The district court concluded that the minimum sentence applies if the amount of active drug used to create the mixture exceeds 10 grams and sentenced Blake to five years' imprisonment.

■ Blake contends that only methamphetamine that is "pure" in the hands of the distributor counts as "methamphetamine, its salts, isomers, and salts of its isomers" for purposes of the statute. Four courts of appeals have rejected this contention, whether made directly or rephrased as a contention that the statute is ambiguous enough to activate the Rule of Lenity. *United States v. Stoner*, 927 F.2d 45 (1st Cir.1991); *United States v. Rusher*, 966 F.2d 868, 879–80 (4th Cir.1992); *United States v. Alfeche*, 942 F.2d 697 (9th Cir.1991); *United States v. Frazier*,

28 F.3d 99 (11th Cir.1994). Our decision in *United States v. Turner*, 93 F.3d 276, 287 (7th Cir.1996), does likewise for the term "methamphetamine (actual)" in the Sentencing Guidelines. See U.S.S.G. § 2D1.1(c). *Turner* observed that the interpretive task is easy, given note B to the guidelines' controlled substances table: "The terms 'PCP (actual)' and 'Methamphetamine (actual)' refer to the weight of the controlled substance, itself, contained in the mixture or substance. For example, a mixture weighing 10 grams containing PCP at 50 percent purity contains 5 grams of PCP (actual)." The statute lacks such a trot. But its import is equally apparent, and we agree with the other courts of appeals that the same method should be used under both the statute and the guidelines.

Although Blake finds the statute ambiguous, predecessors in the drug business have found it clear—so clear that they argued to the Supreme Court that the "mixture or substance" branch is ambiguous, and that the Rule of Lenity requires a court to determine the amount of drug in the mixture and use only that as the basis of sentencing. *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), rejects that argument for LSD, in part because § 841(b)(1)(B)(iv) and (viii) show that the pure-equivalent-amount method is proper only for methamphetamine and PCP:

> With respect to various drugs, including heroin, cocaine, and LSD, [sec. 841] provides for mandatory minimum sentences for crimes involving certain weights of a "mixture or substance containing a detectable amount" of the drugs. With respect to other drugs, however, namely phencyclidine (PCP) or methamphetamine, it provides for a mandatory minimum sentence based *either* on the weight of a *mixture or substance* containing a detectable amount of the drug, *or* on lower weights of *pure* PCP or methamphetamine. . . . Thus, with respect to these two drugs, Congress clearly distinguished between the pure drug and a "mixture or substance containing a detectable amount of" the pure drug. . . . Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to LSD.

500 U.S. at 459, 111 S.Ct. at 1924 (emphasis in original). As the Court explained in *Neal v. United States*, —— U.S. ——, ——, 116 S.Ct. 763, 766, 133 L.Ed.2d 709 (1996), when originally enacted § 841 used the pure-equivalent-amount approach for all drugs. This left penalties unchanged when dealers cut the drugs to the lower purity used for retail distribution, and Congress amended the law in 1986 so that for most drugs the mixture-or-substance approach replaced the pure-equivalent-amount approach. With respect to PCP and methamphetamine, however, the mixture-or-substance approach supplemented rather than superseded the original approach. For these two drugs alone, there is one threshold for pure equivalent amounts, and a higher one for mixtures. Neither the statute nor its history provides any warrant for now discarding the pure-equivalent-amount approach and insisting that the drug *be pure* to be treated as "methamphetamine."

If Blake were right, then a distributor whose inventory is 99 grams of 99 percent methamphetamine would not face a minimum sentence, while a distributor holding 10 grams of 100 percent methamphetamine would go to jail for at least five years. See *Stoner*, 927 F.2d at 46. *Chapman* and *Neal* show that anomalies are bound to occur under a mixture-or-substance approach, because of the great differences in the purity of street-level drugs. These anomalies had to be accepted because of the way the statute treats LSD and most other drugs; they do not have to be accepted for PCP and methamphetamine, and should not wilfully be introduced by the courts. Especially not when the concept of "pure methamphetamine" is itself problematic. Under Blake's view, a dealer could avoid the mandatory minimum penalties by dropping one crystal of sugar into 99 grams of otherwise-pure drug. Given the ability of gas chromatography to detect even the smallest impurities in a sample, we doubt that any substance will test as "pure"; there are bound to be a few stray atoms. (Methamphetamine is an amine derivative of amphetamine, $C_{10}H_{15}N$, in the form of its crystalline hydrochloride. An amine is a var-

iant of ammonia, $NH_3$, in which one or more hydrogen atoms is replaced by a hydrocarbon radical. Any element other than carbon, hydrogen, chlorine, or nitrogen then must be an "impurity" in methamphetamine. Oxygen, which reacts strongly with hydrogen, is one unavoidable contaminant.) So we reject Blake's argument. As a practical matter, this means that the higher thresholds for mixtures will matter only when the PCP or methamphetamine mixture contains less than 10 percent active ingredient. Blake's mixture was much more potent, and the total amount of methamphetamine present in the mixture crossed the line for a five-year mandatory minimum sentence.

Blake has one other string to his bow, but it is a broken string. A first offender, he asked the judge to depart from the statutory sentence under the safety-valve provision, see 18 U.S.C. § 3553(e). The judge found that Blake had not been forthcoming when debriefed. He professed to have forgotten the name, phone number, address, and description of everyone he had ever dealt with in the drug business. The judge dryly remarked: "I find that hard to believe." Blake's current audience is no more credulous.

AFFIRMED.