UNITED STATES of America, Appellant,

v.

Michael DeJULIUS, Appellee.

No. 96–2046.

United States Court of Appeals,
Third Circuit.

Argued May 8, 1997.

Decided Aug. 5, 1997.

Ewald Zittlau (argued), Office of United States Attorney, Philadelphia, PA, for Appellant.

Brian J. McMonagle (argued), McMonagle, Perri & McHugh, Philadelphia, PA, for Appellee.

Before STAPLETON and LEWIS, Circuit Judges and WALLS,* District Judge.

* Honorable William H. Walls, United States District Judge for the District of New Jersey, sitting

by designation.

## OPINION OF THE COURT

LEWIS, Circuit Judge.

Michael DeJulius pleaded guilty to federal charges relating to a conspiracy to distribute nineteen pounds of methamphetamine. The district court sentenced DeJulius to 70–months imprisonment—50 months below the mandatory minimum sentence required by 21 U.S.C. § 841(b)(1)(A)(viii) for possession or distribution of 100 grams or more of methamphetamine. The government appeals on the basis that the district court erred by not applying the ten-year mandatory minimum sentence. We agree with the government and will reverse.

### I.

On December 14, 1994, a federal grand jury returned an indictment charging DeJulius and four co-defendants on numerous counts arising from a conspiracy to manufacture and distribute methamphetamine. On May 15, 1995, DeJulius pleaded guilty to all charges against him.[1] The Presentence Investigation Report ("PSR") attributed nineteen pounds of methamphetamine to DeJulius, resulting in a base offense level of 34. DeJulius then received a 3–level acceptance of responsibility reduction, lowering his total offense level to 31. Taking into account his criminal history category of I and the applicability of the ten-year mandatory minimum for a quantity of methamphetamine over 100 grams, the PSR calculated the applicable guideline range at 120–135 months.

On August 15, 1995, DeJulius filed a sentencing memorandum objecting to the PSR. DeJulius's primary objection was to the quantity of methamphetamine attributed to him. Specifically, DeJulius argued that the ten-year mandatory minimum was not applicable unless the government could prove that the methamphetamine in question was actually D-methamphetamine as opposed to L-methamphetamine.[2]

In response to DeJulius's objections, the district court held a sentencing hearing to determine whether the ten-year mandatory minimum sentence should apply. At the hearing, the government presented substantial evidence regarding both the quantity and quality of the methamphetamine attributable to DeJulius. This evidence included the testimony of Bradley Campbell, a forensic chemist employed by the DEA. Campbell stated that the methamphetamine attributable to DeJulius weighed 446.6 grams and contained 25%, or 111.6 grams, DL-methamphetamine hydrochloride. The district court adopted Campbell's testimony, finding that 111.6 grams of DL-methamphetamine were attributable to DeJulius. *See United States v. DeJulius*, 1996 WL 401004, No. 94–522–01, slip op. at 9 (E.D.Pa. July 15, 1996).[3] The court also concluded, however, that 111.6 grams of DL-methamphetamine was an insufficient quantity to trigger application of the ten-year mandatory minimum statute.

In reaching this conclusion, the court reasoned that DL-methamphetamine should be divided into its components—D-methamphetamine and L-methamphetamine—and that only D-methamphetamine could be counted toward the 100 grams required by the ten-year mandatory minimum. Assuming that our opinion in *United States v. Bogusz*, 43

---

1. DeJulius pleaded guilty to a total of seven counts: (1) conspiracy to distribute and possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846; (2) conspiracy to manufacture methamphetamine in violation of 21 U.S.C. § 846; (3) distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (4) distribution of methylamine in violation of 21 U.S.C. § 841(d)(2); and (5), (6) & (7) unlawful use of a communication facility in violation of 21 U.S.C. § 843(b).

2. Methamphetamine comes in two isomeric forms—D and L. While L-methamphetamine has virtually no "kick," D-methamphetamine produces a "strong ... psychoactive kick." *See*

*United States v. Bogusz*, 43 F.3d 82, 89 (3d Cir. 1994); Christopher S. Wren, *The Illegal Home Business: "Speed" Manufacture*, N.Y. Times, July 8, 1997, at A8. DL-Methamphetamine is generally recognized as a combination of the two forms. *See Bogusz*, 43 F.3d at 89 n. 10.

3. In addition, the court found that the government had proven that 897.4 grams of a material containing a detectable trace of DL-methamphetamine were attributable to DeJulius. *DeJulius*, slip op. at 14. The court concluded that the government had failed to carry its burden of proof with regard to the remaining amount of methamphetamine charged in the indictment.

F.3d 82 (3d Cir.1994), dictated this result, the court reasoned:

> I take this to mean that the [*Bogusz*] court expected we would convert DL-methamphetamine into its components, 50% D-methamphetamine and 50% L-methamphetamine, and calculate the value of each half separately for sentencing purposes, converting the L-half to its equivalent in marijuana. Performing that calculation in this case, the 111.6 grams of pure DL-methamphetamine attributable to the defendant are to be counted as 55.8 grams of D-methamphetamine, or methamphetamine (actual), and 55.8 grams of L-methamphetamine.

*DeJulius,* slip op. at 19.

Thus, the district court concluded that because only D-methamphetamine could be considered "methamphetamine" under 21 U.S.C. § 841(b)(1)(A)(viii), and only 55.8 grams of D-methamphetamine could be attributed to the defendant, the ten-year mandatory minimum did not apply.[4] Instead, the court applied the five-year mandatory minimum provided by 21 U.S.C. § 841(b)(1)(B)(viii) for conduct involving ten grams or more of methamphetamine.[5] After recalculating the applicable guideline range at 70 to 87 months, the court sentenced DeJulius to 70 months of imprisonment.

The government then filed a motion for reconsideration, arguing that the district court had erred by concluding that § 841(b)(1)(A)(viii) distinguished between D– and L–methamphetamine. In support of its position, the government cited an unpublished memorandum opinion, which had been filed by this Court almost simultaneously with the district court's opinion in *DeJulius*. *See United States v. McCusker*, 92 F.3d 1173, No. 95–1963, slip op. at 4 (3d Cir. July 16, 1996) (noting that "the minimum statutory sentence is a function of the *quantity* of methamphetamine not its quality" and con-

cluding that "whether it is D, L, or DL is irrelevant"). The government reasoned that *McCusker* "clearly shows that [the district court's] conclusion that 111.6 grams of pure DL–methamphetamine does not trigger the ten year mandatory minimum is wrong." Government's Motion for Reconsideration, App. at 187–88a.

In denying the government's motion for reconsideration, the court noted, first, that *McCusker* was not binding precedent and, second, that it was distinguishable from DeJulius's case. *United States v. DeJulius,* No. 94–522–01 (E.D.Pa. Aug.20, 1996) (order denying motion for reconsideration). *McCusker* was distinguishable, the court reasoned, because it dealt with the "mixture" clause rather than the "actual substance" clause of § 841(b)(1)(A)(viii). *Id.* at 3. *See generally United States v. Blake,* 116 F.3d 1202, (7th Cir.1997) (discussing the different thresholds for pure equivalent amounts and for mixtures).

On appeal, the government reiterates the argument it made to the district court, namely, that the mandatory minimum statute makes no distinction between different isomeric types of methamphetamine.

## II.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's interpretation of a statute is plenary. *Hartford Accident & Indemnity Co. v. Sharp,* 87 F.3d 89, 91 (3d Cir.1996); *United States v. Copple,* 24 F.3d 535, 539 n. 6 (3d Cir.1994).

## III.

Simply stated, the question for our review is whether "methamphetamine" under 21 U.S.C. § 841(b)(1)(A)(viii) means D-methamphetamine. We begin with the plain lan-

---

**4.** Although the court acknowledged that *Bogusz* dealt exclusively with the definition of methamphetamine under the Sentencing Guidelines rather than § 841(b)(1)(A)(viii), it nevertheless concluded that the definition was equally applicable to the statute.

**5.** Section 841(b)(1)(B)(viii) imposes a five year mandatory minimum sentence on anyone who possesses "10 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers." 21 U.S.C. § 841(b)(1)(B)(viii).

guage of the statute. Section 841(b)(1)(A)(viii) provides a mandatory minimum sentence of ten years imprisonment for persons possessing or distributing:

> 100 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. . . .

21 U.S.C. § 841(b)(1)(A)(viii).

Thus, a person convicted of methamphetamine possession can be subject to the mandatory minimum in one of two ways: (1) if the quantity of actual methamphetamine equaled or exceeded 100 grams; or (2) if the quantity of methamphetamine mixture equaled or exceeded one kilogram. Because methamphetamine is often "cut" with other, non-controlled substances, the "mixture" clause provides a higher quantity threshold than the "actual substance" clause. *See Blake,* 116 F.3d at 1203. By its explicit terms, however, § 841(b)(1)(A)(viii) makes no distinction between the different isomeric types of methamphetamine in either clause.

Thus, according to the government, it makes no difference for purposes of the mandatory minimum statute whether the substance in question is D-methamphetamine, L-methamphetamine or DL-methamphetamine. We agree. The statute plainly makes no such distinction.

The district court rejected the plain language argument, however, finding that the statute was ambiguous. Noting the absence of any Third Circuit precedent interpreting the statute, the district court looked to our opinion in *United States v. Bogusz,* 43 F.3d 82 (3d Cir.1994), for guidance.

In *Bogusz,* we vacated the sentences of two defendants because the district court had sentenced them under the Sentencing Guidelines using the penalties for methamphetamine (actual) without determining the type of methamphetamine involved. *Id.* at 94. Noting the dramatic sentencing disparity between L-methamphetamine and D-methamphetamine under the Guidelines, we held that methamphetamine (actual) could only be D-methamphetamine. *Id.* at 90.

As stated earlier, the district court acknowledged that *Bogusz* was limited in its analysis to the Guidelines but found the analysis to be persuasive with regard to the mandatory minimum statute as well. Thus, the district court concluded that, as with the Guidelines, the term "methamphetamine" in § 841(b)(1)(A)(viii) meant only "D-methamphetamine."

The district court's reliance on *Bogusz* was misplaced. The analysis in *Bogusz* was clearly limited to the Guidelines and was driven by the Guidelines' dramatic sentencing disparity between L– and D–methamphetamine. Since *Bogusz* was decided, the Sentencing Commission has amended the Guidelines to delete the distinction between L– and D–methamphetamine. In explaining the amendment, the Commission stated:

> [T]his amendment deletes the distinction between d– and l–methamphetamine in the Drug Equivalency Tables in the Commentary to § 2D1.1. L-methamphetamine, which is rather weak form of methamphetamine, is rarely seen and is not made intentionally, but rather results from a botched attempt to produce d–methamphetamine. Under this amendment, l–methamphetamine would be treated the same as d–methamphetamine. . . . Currently, unless the methamphetamine is specifically tested to determine its form, litigation can result over whether the methamphetamine is l–methamphetamine or d-methamphetamine. In addition, there is another form of methamphetamine (dl–methamphetamine) that is not listed in the Drug Equivalency Table. The listing of l–methamphetamine as a separate form of methamphetamine has led to litigation as to how dl–methamphetamine should be treated. . . . Under this amendment, all forms of methamphetamine are treated alike, thereby simplifying guideline application.

U.S.S.G.App. C, Amend. 518 (effective November 1, 1995).

Thus, even as applied to the Guidelines, our holding in *Bogusz* has been rendered virtually obsolete. The distinction between D– and L–methamphetamine will only be relevant for those few defendants whose con-

duct occurred prior to the November 1, 1995 amendment and for whom the mandatory statutory minimum is not applicable.

Moreover, unlike the district court, we find no distinction between the "actual" and "mixture" clauses of § 841(b)(1)(A)(viii). Both clauses refer to "methamphetamine, its salts, isomers, or salts of its isomers." Nothing in the language of either clause indicates that the D/L distinction should be made for the "actual" clause but need not be made for the "mixture" clause.

### IV.

In sum, because the district court found, as a factual matter, that 111.6 grams of DL-methamphetamine were attributable to DeJulius—11.6 grams over the amount required by § 841(b)(1)(A)(viii)—the district court erred by not applying the ten-year mandatory minimum sentence. Accordingly, we will reverse the judgment of the district court, and remand for resentencing in accordance with this opinion.