United States Court of Appeals
Fifth Circuit

F I L E D

April 21, 2006

Charles R. Fulbruge III
Clerk

REVISED APRIL 27, 2006

**UNITED STATES COURT OF APPEALS
for the Fifth Circuit**

No. 04-41721

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DAVID HENRY TREFT,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

Before HIGGINBOTHAM, DeMOSS, and OWEN, Circuit Judges.

DeMOSS, Circuit Judge:

On June 1, 2004, a jury found David Henry Treft guilty of knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with the intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers in violation of 21 U.S.C. § 841(a)(1). The presentence investigation report ("PSR")

recommended a base offense level of 30 for Treft under the United States Sentencing Guidelines ("U.S.S.G."), based on the discovery of 36 empty pseudoephedrine pill packages — which, according to the PSR, contained 77.76 grams of pseudoephedrine when full — in Treft's trash and 99.9 grams of marijuana in Treft's home. The PSR further recommended that the court not consider the 4128.2 grams of liquid containing trace amounts of methamphetamine also found in Treft's home for sentencing purposes pursuant to note 1 of the commentary to § 2D1.1, although the PSR noted that the same liquid should be counted for minimum mandatory sentencing purposes under 21 U.S.C. § 841(b). Treft objected to the PSR's estimate regarding pseudoephedrine and to its use of facts not found by a jury beyond all reasonable doubt in calculating his sentence. He also requested that the district court grant a two-level adjustment pursuant to U.S.S.G. § 2D1.1(b)(6) for satisfying the criteria in § 5C1.2, the "safety valve" provision. The district court rejected Treft's objections and his request for a safety valve adjustment and sentenced him to the statutory minimum of 10 years' imprisonment under 21 U.S.C. § 841(b)(1)(A). Treft appealed, challenging his conviction and sentence. For the following reasons, we affirm both.

## I. Facts and Proceedings

In late 2002, an individual complained to the police about chemical odors coming from Treft's home. The police subsequently searched Treft's trash and found thirty-six empty pseudoephedrine packages, peeled lithium batteries, and other items used in the

2

production of methamphetamine. Based on this information, the police obtained a search warrant and searched Treft's residence. There, the police discovered 0.66 grams of methamphetamine, 99.9 grams of marijuana, 4128.2 grams of a liquid that tested positive for methamphetamine, $13,000 in cash, and other evidence of an active methamphetamine laboratory.

On December 10, 2003, a federal grand jury returned a one-count indictment, charging Treft with knowingly or intentionally manufacturing, distributing, or dispensing, or possessing with the intent to manufacture, distribute, or dispense, 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers and 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, all in violation of 21 U.S.C. § 841(a)(1). Treft plead not guilty to the charges against him and proceeded to trial. At the conclusion of the Government's case, Treft moved for a judgment of acquittal, which the district court granted as to the 50 grams of pure methamphetamine but denied as to the 500 grams of a mixture or substance containing a detectable amount of methamphetamine. The jury found Treft guilty of the remaining charge, and the court ordered the preparation of a PSR for sentencing.

The PSR prepared for sentencing recommended a base offense level of 30 for Treft under U.S.S.G. § 2D1.1, based on the discovery of 36 empty pseudoephedrine pill packages, which once contained 77.76 grams of pseudoephedrine, in Treft's trash and 99.9

3

grams of marijuana in Treft's home. The 4128.2 grams of liquid containing traces of methamphetamine also found in Treft's home were not considered for sentencing purposes pursuant to note 1 of the commentary to U.S.S.G. § 2D1.1,[1] although that same liquid was considered for purposes of 21 U.S.C. § 841(b).[2] After discussing Treft's criminal history and offender characteristics, the PSR concluded that the guideline range for sentencing was 120 to 121 months, considering the statutory minimum term of imprisonment under 21 U.S.C. § 841(b) of 10 years and the maximum term of imprisonment under the guidelines of 121 months. Treft submitted written objections to the PSR, complaining that the PSR's calculation of the amount of pseudoephedrine attributable to him was unreasonable and that the PSR should not have incorporated facts not found by a jury beyond all reasonable doubt in

---

[1]Note 1 reads, in substantial part,
"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. *Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used.*
U.S.S.G. § 2D1.1 cmt. n.1 (2003) (emphasis added). The district court used the 2003 U.S. Sentencing Guidelines Manual in sentencing Treft.

[2]Section 841(b)(1)(A) provides, in part,
In the case of a violation of subsection (a) of this section involving . . . 500 grams or more of *a mixture or substance containing a detectable amount of methamphetamine*, its salts, isomers, or salts of its isomers; such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .
21 U.S.C. § 841(b)(1)(A) (2000) (emphasis added).

4

calculating his sentence. He also requested that the district court grant a two-level adjustment pursuant to U.S.S.G. § 2D1.1(b)(6) for satisfying the criteria in § 5C1.2, the "safety valve" provision. The district court rejected Treft's objections and his request for a safety valve adjustment and, adopting the PSR's recommendations, sentenced him to 10 years' imprisonment. Treft appealed, challenging his conviction and sentence.[3]

On appeal, Treft argues (1) that the evidence is insufficient to support his conviction, (2) that he was sentenced in violation of the Sixth Amendment, and (3) that the district court erred in denying Treft's request for safety valve relief.

## II. Discussion

A.    Sufficiency of the Evidence

In an ordinary sufficiency of the evidence case, we review a defendant's claim that the evidence is insufficient to support his conviction in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the jury. *United States v. Wise*, 221 F.3d 140, 147 (5th Cir. 2000); *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999). We must uphold the conviction if a rational jury could have found that the

---

[3]Treft's original appeal was not timely filed, and this Court remanded the case to the district court for a determination of whether his failure to file in a timely manner was excusable. *United States v. Treft*, No. 04-41721 (5th Cir. Jan. 5, 2005). The district court found the untimely filing excusable and returned the case to this Court for further proceedings. *United States v. Treft*, No. 4:03-CR-190 (E.D. Tex. Feb. 23, 2005).

5

government proved the essential elements of the crime charged beyond a reasonable doubt. *Wise*, 221 F.3d at 147; *Lage*, 183 F.3d at 382. This standard of review is the same regardless of whether the evidence is direct or circumstantial. *Wise*, 221 F.3d at 147; *Lage*, 183 F.3d at 382.

However, this is not an ordinary sufficiency of the evidence case. Treft does not challenge the factual basis for his conviction; he challenges the legal basis for attributing 500 grams of a mixture or substance containing methamphetamine to him. According to Treft, (1) the liquid containing traces of methamphetamine found in his home should not have been counted for purposes of 21 U.S.C. § 841 because it was an unmarketable mixture under *Chapman v. United States*, 500 U.S. 453 (1991), and (2) there is insufficient evidence to support his conviction if that liquid is not counted. Thus, this case hinges on a legal determination of whether *Chapman*'s marketability test applies in § 841 cases involving methamphetamine. We apply a *de novo* standard of review to legal determinations, *see United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004), but where, as here, a defendant raises a legal argument for the first time on appeal,[4] we review for plain error,

_____

[4]Granted, Treft moved for a judgment of acquittal at trial, but he did not raise his *Chapman* claim at that time. Moreover, he dropped his motion for judgment of acquittal as to the 500 grams of a mixture or substance containing methamphetamine once the district court granted it as to the 50 grams of pure methamphetamine. Thus, he failed to satisfy the purpose of requiring a defendant to object to preserve an issue for review: "to call the court's attention to

6

*see United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc), *abrogated in part by Johnson v. United States*, 520 U.S. 461 (1997). We will find reversible error only if there was an error, the error was clear or obvious, and the error affected the defendant's substantial rights. *Calverley*, 37 F.3d at 162-64 (citing *United States v. Olano*, 507 U.S. 725 (1993)).

Because we find that there was no error committed regarding the calculation of methamphetamine quantity in this case, we affirm Treft's conviction. The law in this Circuit is clear: the *Chapman* marketability test does not apply when determining whether a liquid is a mixture or substance containing methamphetamine under § 841. *See United States v. Anderson*, 987 F.2d 251, 257-58 (5th Cir. 1993); *United States v. Sherrod*, 964 F.2d 1501, 1509-11 (5th Cir. 1992); *see also United States v. Palacios-Molina*, 7 F.3d 49, 52-53 (5th Cir. 1993) ("[I]t would appear that [*Chapman*'s] market-oriented analysis was not intended to apply to methamphetamine or PCP. In fact, this Circuit has recognized as much."). Treft gives no reason why we should change our law, other than citing a Seventh Circuit case, *United States v. Stewart*, 361 F.3d 373, 377-80 (7th Cir. 2004), that conflicts with Fifth Circuit precedent. Absent an

the potential error 'in such a manner so that the district court may correct itself and thus, obviate the need for [appellate] review.'" *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 355 (5th Cir. 2005) (quoting *United States v. Rodriguez*, 15 F.3d 408, 414 (5th Cir. 1994)).

intervening Supreme Court or en banc decision or a change in statutory law,[5] we are bound to follow a prior panel's decision. *United States v. Anderson*, 853 F.2d 313, 320 (5th Cir. 1988). Accordingly, we find that Treft's challenge to the calculation of the quantity of methamphetamine found in his home must fail and, therefore, affirm Treft's conviction.

B.   *Booker* Challenge

The record demonstrates, and the Government does not dispute, that Treft made a *Blakely* objection at sentencing by objecting to the district court's adoption of the PSR, which used facts – empty pseudoephedrine packages discovered in his trash and marijuana discovered in his home – not found by a jury beyond a reasonable doubt in calculating his sentence. Accordingly, Treft preserved his *Booker* challenge and we review for harmless error. *United States v. Saldana*, 427 F.3d 298, 313-14 (5th Cir. 2005) (holding that a *Booker* challenge is preserved when a *Blakely* objection – even one that is "less than crystal clear" – is made at sentencing).

Harmless error, as defined by the Federal Rules of Criminal Procedure, is "any error, defect, irregularity or variance that does not affect substantial rights," and such an error must be

---

[5]The definition of "mixture of substance" in the commentary to U.S.S.G. § 2D1.1 has been amended since we decided *Anderson* and *Sherrod*, but the definition in 21 U.S.C. § 841(b) has not. Thus, *Anderson* and *Sherrod* govern the definition of "mixture or substance" under § 841. *See Neal v. United States*, 516 U.S. 284, 290 (1996); *United States v. Morgan*, 292 F.3d 460, 465 (5th Cir. 2002).

8

disregarded. FED. R. CRIM. P. 52(a); *Saldana*, 427 F.3d at 314. The government bears the burden of proving beyond a reasonable doubt that an error is harmless. *Saldana*, 427 F.3d at 314. In the *Booker* context, although it is plainly erroneous to sentence a defendant based on facts not found by a jury beyond a reasonable doubt, *id.*; *United States v. Mares*, 402 F.3d 511, 520-21 (5th Cir. 2005), we will affirm a defendant's sentence if the government demonstrates that the *Booker* error was harmless, *Saldana*, 427 F.3d at 314. According to the Government in this case, the district court would have sentenced Treft to ten years' imprisonment under 21 U.S.C. § 841(b)(1)(A) regardless of whether it considered the pseudoephedrine packages discovered in his trash or the marijuana discovered in his home. We agree with the Government. Section 841(b)(1)(A) mandates a minimum sentence of ten years' imprisonment for a conviction under § 841(a) involving 500 grams or more of a mixture or substance containing methamphetamine. Treft was convicted of such an offense. The district court could not have sentenced Treft to anything less than ten years in prison. Thus, any error committed by the court in considering facts not found by a jury beyond all reasonable doubt was harmless.

C.   "Safety Valve" Adjustment

We review a district court's findings of fact regarding U.S.S.G. § 5C1.2 for clear error and its legal interpretation of that section *de novo*. *United States v. Miller*, 179 F.3d 961, 963-64

(5th Cir. 1999).

U.S.S.G. § 5C1.2, also known as the "safety valve" provision, limits the applicability of statutory minimum sentences in certain cases, specifically, those involving less culpable defendants who fully assist the Government. U.S.S.G. § 5C1.2, cmt. ("Background") (2003); *Miller*, 179 F.3d at 964. To receive safety valve protection, a defendant must satisfy the five criteria listed in § 5C1.2; if he does so, the court will "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." U.S.S.G. § 5C1.2(a). Furthermore, under § 2D1.1(b)(6), the court will decrease the defendant's base offense level by two levels once the safety valve is triggered. U.S.S.G. § 2D1.1(b)(6). The district court in this case rejected Treft's request for a two-level safety valve adjustment, finding that he had not satisfied the fifth criterion of the safety valve provision.[6] Treft argues on appeal that the district court erred because it based its decision to reject his request on his failure to plead guilty. According to Treft, the district court determined that Treft had not satisfied § 5C1.2(a)(5) because he insisted on going to trial.

Section 5C1.2(a)(5) requires that "not later than the time of the sentencing hearing, the defendant . . . truthfully provide[] to the Government all information and evidence the defendant has

---

[6]The parties do not dispute whether Treft satisfied the first four criteria in § 5C1.2.

10

concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5). Although it may be the case, as Treft contends, that a court may not deny safety valve relief simply because a defendant pleads not guilty, that is not what the district court did in this case. First, the record demonstrates that the district court went to great lengths to determine whether Treft had provided the information and evidence required by § 5C1.2(a)(5), even continuing sentencing to November 5, 2004 to gather more information.[7] And, more importantly, the parties stipulated on the second day of sentencing that Treft had not provided the Government with "all information or evidence regarding Treft's methamphetamine production/distribution." (R. at 103.) Accordingly, Treft was not eligible for a safety valve adjustment regardless of whether he plead guilty or went to trial. The district court did not err in denying Treft's request for safety valve relief.

### III. Conclusion

Accordingly, we AFFIRM Treft's conviction and sentence.

---

[7]In fact, the record indicates that Treft's safety valve argument is disingenuous because the district court never stated that it was basing its safety valve decision on Treft's plea of not guilty. Rather, the district court simply indicated that it would be a rare case in which a defendant both plead not guilty and provided the government with all the information and evidence required by § 5C1.2(a)(5); the court did not state that such a case could never exist.

11

PRISCILLA R. OWEN, Circuit Judge, concurring:

I join the court's opinion regarding its disposition of the Sixth Amendment and "safety valve" issues. I additionally agree that based on binding precedent in this circuit, the district court properly calculated the amount of methamphetamine attributable to Treft in imposing the minimum statutory sentence of ten years under 21 U.S.C. § 841(b)(1)(A)(viii).[1] However, I write separately because I respectfully suggest that the court, en banc, should reconsider its construction of 21 U.S.C. § 841(b)(1)(A)(viii) and its interpretation of the Supreme Court's decision in *Chapman v. United States*.[2] How the Supreme Court would apply the rationale of *Chapman* to the facts before us is far from clear, but it at least seems clear that the "market-oriented approach" discussed in *Chapman* applies to methamphetamine the same way that it applied to LSD in *Chapman*.[3]

To me, the question distills to this: in light of *Chapman*,

[1]The statute provides: "In the case of a violation of subsection (a) of this section involving . . . 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, it salts, isomers, or salts of its isomers; such person shall be sentenced to a term of imprisonment which may not be less than 10 years . . . ."

[2]500 U.S. 453 (1991).

[3]*See id.* at 461 (discussing the method for calculating the weight of an LSD mixture or substance for purposes of determining the appropriate statutory penalty for illegal distribution of LSD).

would the Supreme Court hold that only the weight of the illegal drug can be used in sentencing when it is a small percentage of an unusable, unmarketable mixture that resulted from a "bad batch" or an interruption in the manufacturing process, or conversely, would the Court hold that a "bad batch" or substance seized in mid-processing is a mixture within the meaning of section 841(b)(1)(A)(viii) either because the mixture is a "tool of the trade" or because the illegal drug chemically bonded or was mixed with the other material. On balance, it seems the plain meaning of the statute should govern. In the case before us, the "bad batch" was a mixture weighing 500 grams or more that contained a detectable amount of methamphetamine, and therefore, the statutory minimum sentence applies. Whether due process would be implicated is another question left open in *Chapman*, but it is not a question raised in this appeal.

**I**

Officers arrested Treft at his home after finding considerable evidence that he was manufacturing methamphetamine. They found .66 grams of methamphetamine in finished form and two jars containing a liquid mixture that weighed 4,128.8 grams. Testing revealed that the mixture in the jars contained less than two grams of methamphetamine. Treft told the officers that the liquid was "a batch that didn't turn out," and the evidence was undisputed that the 4,128.8 grams of liquid was unusable and unmarketable.

13

Treft's case proceeded to a jury trial, and the jury was instructed that in order to find Treft guilty, they had to find that "the quantity of the substance was at least 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." During deliberations, the jury sent the judge a note inquiring whether the mixture could be 500 grams or more or whether there had to be 500 grams of methamphetamine. The district court responded that the "substance" need not be pure methamphetamine and that the "mixture or substance" must be at least 500 grams or more. The jury then found Treft guilty. The district court imposed a 120-month sentence, the minimum sentence required under 21 U.S.C. § 841(b)(1)(A)(viii).

## II

Treft contends that the evidence is insufficient to support the jury's finding and thus the statutory minimum sentence. If the two grams or less of methamphetamine in the 4,128.8-gram mixture is all that can be counted, then Treft is correct. The outcome depends on the construction of the phrase "500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers," which is found in section 841(b)(1)(A)(viii), a minimum sentencing provision.[4]

---

[4]21 U.S.C. § 841(b)(1)(A)(viii) (prescribing penalties for manufacturing, distributing, dispensing or possessing methamphetamine).

14

In *Chapman*, the Supreme Court construed an almost identical phrase used in another sentencing provision in section 841(b), prescribing a minimum sentence of five years for distributing one or more grams "'of a mixture or substance containing a detectable amount of'" LSD.[5] The defendants in *Chapman* sold 10 sheets of blotter paper containing 10,000 doses of LSD. The LSD alone weighed about 50 milligrams, but if the weight of the paper was included, the weight was 5.7 grams. The Supreme Court held that the weight of the paper should be included.[6] The Court discussed the anomalous results that could obtain from its conclusion that section 841(b) required the inclusion of a drug carrier medium (such as blotter paper or a sugar cube), but was nevertheless convinced that Congress intended those results.[7] The Court explained that "[s]o long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence."[8] The Court also concluded, "Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the

---

[5]*Chapman*, 500 U.S. at 455 (quoting and construing 21 U.S.C. § 841(b)(1)(B)(v)).

[6]*Id.* at 468.

[7]*Id.* at 458.

[8]*Id.* at 459.

15

sentence."[9]

During the course of the opinion in *Chapman*, the Supreme Court contrasted the subpart of section 841(b) addressing sentences involving LSD with sentences involving PCP or methamphetamine. The Court said,

> The statute refers to a "mixture or substance containing a detectable amount." So long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence.
>
> This reading is confirmed by the structure of the statute. With respect to various drugs, including heroin, cocaine, and LSD, it provides for mandatory minimum sentences for crimes involving certain weights of a "mixture or substance containing a detectable amount" of the drugs. With respect to other drugs, however, namely phencyclidine (PCP) or methamphetamine, it provides for a mandatory minimum sentence based *either* on the weight of a *mixture or substance* containing a detectable amount of the drug, *or* on lower weights of *pure* PCP or methamphetamine. For example, § 841(b)(1)(A)(iv) provides for a mandatory 10-year minimum sentence for any person who distributes "100 grams or more of . . . PCP . . . or 1 kilogram or more of a mixture or substance containing a detectable amount of . . . PCP . . . ." Thus, with respect to these two drugs, Congress clearly distinguished between the pure drug and a "mixture or substance containing a detectable amount of" the pure drug. But with respect to drugs such as LSD, which petitioners distributed, Congress declared that sentences should be based exclusively on the weight of the "mixture or substance." Congress knew how to indicate that the weight of the pure drug was to be used to determine the sentence, and did not make that distinction with respect to LSD.[10]

The foregoing contrast forms the basis of the Fifth Circuit's

---

[9] *Id.* at 461.

[10] *Id.* at 459.

16

conclusion that the market-oriented approach discussed in *Chapman* does not apply to methamphetamine or PCP offenses.[11] I respectfully submit that *Chapman* does not require such a conclusion. The Supreme Court was simply saying that with regard to methamphetamine or PCP, a statutory minimum sentence applies if the offense involved *either* a certain weight of a pure drug or a mixture of a specified weight containing a detectable amount of a drug. In reality, methamphetamine will rarely be entirely pure.[12] The statutory minimum sentence applies if the offense involves "50 grams or more of methamphetamine . . . or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine."[13] A substance that is 99% methamphetamine and 1% inert material weighing 51 grams would trigger the minimum sentence, regardless of whether it is considered "methamphetamine" or "a mixture or substance." As the Seventh Circuit has pointed

---

[11]*See, e.g.*, *United States v. Palacios-Molina*, 7 F.3d 49, 53 (5th Cir. 1993) (observing in dicta that "the Supreme Court embarked on its market-oriented analysis only after specifically recognizing that the drugs methamphetamine and PCP were singled out for different treatment under the Guidelines. . . . [I]t would appear that the market-oriented analysis was not intended to apply to methamphetamine or PCP" (citation omitted)); *United States v. Sherrod*, 964 F.2d 1501, 1510 (5th Cir. 1992) ("[I]t does not appear that the *Chapman* Court intended its market-oriented analysis to be applied to methamphetamine or PCP.").

[12]*See United States v. Blake*, 116 F.3d 1202, 1203-04 (7th Cir. 1997) (discussing the chemical composition of methamphetamine and the likelihood that most samples of the drug will contain contaminants).

[13]21 U.S.C. § 841(b)(1)(A)(viii).

17

out, "[a]s a practical matter, this means that the higher thresholds for mixtures will matter only when the PCP or methamphetamine mixture contains less than 10 percent active ingredient."[14]

In determining what is or is not a "mixture or substance," the same principles apply, including the market-oriented approach, regardless of whether the drug is methamphetamine, PCP, LSD or one of the other drugs identified in section 841(b). Congress used the same phrase, "[specified weight] or more of a mixture or substance containing a detectable amount of [specified drug]," at least sixteen times in section 841(b).[15] Only the quantity and the drug vary among those subsections. There is no indication from the text of section 841(b) or from *Chapman* that Congress intended the same phrase to have different meanings, depending on the type of drug to which the phrase was appended.

The question not clearly resolved by *Chapman* is how its rationale applies when detectable amounts of a drug are contained

---

[14]*Blake*, 116 F.3d at 1204.

[15]21 U.S.C. § 841(b)(1)(A)(i) (heroin); *id.* § 841(b)(1)(A)(ii) (coca leaves, cocaine, and other drugs); *id.* § 841(b)(1)(A)(iv) (PCP); *id.* § 841(b)(1)(A)(v) (LSD); *id.* § 841(b)(1)(A)(vi) (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); *id.* § 841(b)(1)(A)(vii) (marijuana); *id.* § 841(b)(1)(A)(viii) (methamphetamine); *id.* § 841(b)(1)(B)(i) (heroin); *id.* § 841(b)(1)(B)(ii) (coca leaves, cocaine, and other drugs); *id.* § 841(b)(1)(B)(iv) (PCP); *id.* § 841(b)(1)(B)(v) (LSD); *id.* § 841(b)(1)(B)(vi) (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); *id.* § 841(b)(1)(viii) (methamphetamine).

in an unmarketable mixture or substance.  Not only did the Supreme Court say that "Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence,"[16] the Court also said that the quantity of drugs is to be measured by the "'street weight'":

> The penalty scheme set out in the Anti-Drug Abuse Act of 1986 is intended to punish severely large-volume drug traffickers at any level. . . .  It assigns more severe penalties to the distribution of larger quantities of drugs.  By measuring the quantity of the drugs according to the "street weight" of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity.  That is a rational sentencing scheme.[17]

The discussion of a market-oriented approach and the street weight of drugs has led some circuits to conclude that only the amount of a drug in an unusable or nonmarketable mixture containing detectable amounts of a drug should be used for sentencing purposes under section 841(b)'s "mixture or substance" provisions, or that the sentence should be based on the amount of the drug that likely could have been manufactured.[18]  This is a logical, reasonable

---

[16]*United States v. Chapman*, 500 U.S. 453, 461 (1991).

[17]*Id*. at 465.

[18]*See*, *e.g.*, *United States v. Stewart*, 361 F.3d 373, 382 (7th Cir. 2004) (holding that only the amount of pure drug contained in an 825-gram solution generated during a thwarted attempt to produce methamphetamine or the amount of usable drug likely to be produced

method of sentencing, but it is not necessarily the scheme section 841(b), as interpreted by *Chapman*, intended.  As this circuit has noted, there are passages in *Chapman* that support the conclusion that the entire amount of a mixture or substance containing a detectable amount of a drug should be used for sentencing purposes even if the mixture or substance is waste or unmarketable.[19]  The

after the solution was fully processed could be used in sentencing under the statute); *United States v. Jennings*, 945 F.2d 129, 136 (6th Cir. 1991) (holding, where the mixture was seized during processing, "[i]t seems fortuitous, and unwarranted by the statute, to hold the defendants punishable for the entire weight of the mixture when they could have neither produced that amount of methamphetamine nor distributed the mixture containing methamphetamine"); *cf. United States v. Gori*, 324 F.3d 234, 238 (3d Cir. 2003) (holding in a methamphetamine case that "whether a drug plus its carrier is a mixture turns not on the purity of the controlled substance contained therein, but rather on how 'combined' the substances are and whether the impure drug is 'marketable'") (citation omitted).  *But see United States v. Sprague*, 135 F.3d 1301, 1306 n.4 (9th Cir. 1998) (stating "[w]e held that a defendant should be given the mandatory minimum sentence under Section 841 based on the entire weight of a liquid solution containing methamphetamine and by-products of the production process"); *United States v. Richards*, 87 F.3d 1152, 1158 (10th Cir. 1996) (en banc) (holding that unusable and unmarketable portion of a methamphetamine mixture seized in the midst of manufacturing should be included for sentencing purposes under section 841(b)); *United States v. Innie*, 7 F.3d 840, 845, 847 (9th Cir. 1993) (holding that entire weight of unfinished methamphetamine mixture should be included even though it was poisonous if ingested).

[19]*United States v. Anderson*, 987 F.2d 251, 257-58 (5th Cir. 1993) (rejecting argument that a sentence for attempting to manufacture methamphetamine should be based on the amount of the pure drug, not on the weight of the substance that contained a detectable amount, and observing that "the argument now advanced by Anderson [is] inconsistent with § 841(b), the sentencing guidelines, and passages in *Chapman*"); *United States v. Walker*, 960 F.2d 409, 412 (5th Cir. 1992) (concluding that "much of the language in *Chapman* supports" the conclusion that "the total weight of a liquid substance

20

Supreme Court said in *Chapman,* "So long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence," and "if the carrier is a 'mixture or substance containing a detectable amount of the drug,' then under the language of the statute the weight of the mixture or substance, and not the weight of the pure drug, is controlling."[20] The Court also held in *Chapman* that the terms "mixture" and "substance" "must be given their ordinary meaning" and discussed the definition of "mixture" found in a dictionary.[21] The Court additionally observed that "[b]lotter paper makes LSD easier to transport, store, conceal, and sell. It is a tool of the trade for those who traffic in the drug, and therefore it was rational for Congress to set penalties based on this chosen tool."[22] "Bad batches" and waste products containing small amounts of illegal drugs would seem just as much a "tool of the trade" as the blotter paper.[23]

----

containing methamphetamine" should be used in calculating a sentence "despite [the] fact that most of the liquid was waste material").

[20]*Chapman*, 500 U.S. at 459, 460.

[21]*Id.* at 462 (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1449 (1986)).

[22]*Id.* at 466.

[23]*See, e.g. United States v. Innie*, 7 F.3d 840, 845, 847 (9th Cir. 1993) (concluding that entire mixture seized during manufacturing, which contained four to eight percent methamphetamine and would be poisonous if ingested, "can be said to facilitate the distribution of methamphetamine because methamphetamine could not have been produced without it").

The *Chapman* decision seems to have focused primarily, if not exclusively, on the distribution of drugs. The defendants in that case were convicted of distributing, not manufacturing, an illegal drug.[24] The arguments and examples the defendants put forth focused on distributing, not manufacturing, as did the Court's responses to those arguments and examples. Perhaps this accounts for the Court's statements regarding a market-oriented approach and the street weight of drugs and the Court's failure to discuss the implications those concepts might have when a conviction involved manufacturing.[25] But we can only speculate on that score.

Because *Chapman* does not resolve the question of how to treat unmarketable mixtures created in a manufacturing process with clarity, we are left with the statute as written. Section 841(b) does not make any distinction between manufacturing and marketing drugs. Both are crimes under section 841(a) for which the punishments in section 841(b) are imposed. If a substance or mixture contains a detectable amount of a drug, then the weight of that substance or mixture should be used for sentencing purposes

---

[24]*Chapman*, 500 U.S. at 455-56.

[25]*But see United States v. Stewart*, 361 F.3d 373, 381 (7th Cir. 2004) (rejecting the Government's argument that unusable portions of a solution should be included when the conviction was for manufacturing and holding that "[i]t would be illogical to include the entire weight of the 825-gram solution in the drug-quantity – thus subjecting [the defendant] to a mandatory minimum sentence – merely because [the defendant] was caught after he had combined the raw materials, but before he had produced usable methamphetamine").

22

even if it is a "bad batch" and unusable.

The Sentencing Commission amended the Guidelines after the *Chapman* decision to make it clear that the weight of waste materials containing a detectable amount of a drug should not be included in determining the base offense level.[26] The Guidelines were also amended to provide that the weight of an LSD carrier medium, such as blotter paper, cannot be used to determine an offender's base offense level.[27] The Supreme Court has held, however, that its interpretation of section 841(b) in *Chapman* remains unchanged by Commission amendments.[28] To the extent there are conflicts between section 841(b) as interpreted by the Supreme

---

[26]U.S. SENTENCING GUIDELINES MANUAL § 2D1.1, cmt. n.1 (2005) (defining "mixture or substance" to exclude "materials that must be separated from the controlled substance before the controlled substance can be used" such as "waste water from an illicit laboratory used to manufacture a controlled substance"); *id.* app. C, amend. 484 (effective November 1, 1993) (citing *United States v. Sherrod*, 964 F.2d 1501 (5th Cir. 1992), as a case the amendments were addressing and stating "chemicals seized before the end of processing are also not usable in that form because further processing must take place before they can be used"); *see also United States v. Levay*, 76 F.3d 671, 673 (5th Cir. 1996) (holding that Amendment 484 to the Guidelines "specifically addresses precursor chemicals mixed with controlled substances," and therefore only 5.96 grams of a mixture weighing 9,892 grams could be used to calculate the base offense level because "the disputed material here has to be separated from the remaining liquid before it can be used").

[27]*Id.* § 2D1.1(c), cmt. n.(H) (2005); *see also id.* app. C, amend. 488 (effective November 1, 1993).

[28]*Neal v. United States*, 516 U.S. 284, 290 (1996) ("[W]e conclude that the Commission's choice of an alternative methodology for weighing LSD does not alter our interpretation of the statute in *Chapman*. In any event, principles of *stare decisis* require that we adhere to our earlier decision.").

Court and the Guidelines, the mandatory minimums in section 841(b) govern.[29]

The Court today reaches the correct result, and I concur.

---

[29] *Id.* at 296 ("We hold that § 841(b)(1) directs a sentencing court to take into account the actual weight of the blotter paper with its absorbed LSD, even though the Sentencing Guidelines require a different method of calculating the weight of an LSD mixture or substance."); *see also United States v. Morgan*, 292 F.3d 460, 465 (5th Cir. 2002) ("Amendments to the Guidelines do not override *Chapman* for the purpose of statutory mandatory minimums.").