United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 05-20581

———————————

UNITED STATES OF AMERICA

                    Plaintiff - Appellee

    v.

KENNETH GREEN, also known as Sherrod Sylvester McClain

                    Defendant - Appellant

———————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas, Houston
No. 4:98-CR-311

———————————————————————————————

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

PER CURIAM:[*]

    In August 1998, the defendant-appellant, Kenneth Green, was

charged by indictment as "John Doe" with making a false statement

on a passport application in violation of 18 U.S.C. § 1542.  The

indictment specifically alleged that the defendant "stated and

represented in the Form DSP-11, 'Application for a United States

Passport,' that he was in fact Sherrod Sylvester McClain when,

_____

    [*]  Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

-1-

then and there, Defendant knew that he was not Sherrod Sylvester McClain." Along with the passport application, Green submitted an application for a Texas identification card that bore right and left thumbprints and a photograph, also purporting to be those of McClain.

At the time of the indictment, Green was known to law enforcement officials only by McClain, the alias he had used to commit the underlying offense of making a false statement on a passport application. Post-indictment, agents entered the information they had on Green, including his physical description, into the National Crime Information Center system. Because agents suspected that the defendant was involved in drug trafficking, copies of the warrant and photographs of the subject were given to a Houston police sergeant involved with a drug task force in December 1998, and to a Drug Enforcement Administration agent in January 1999. On August 30, 2002, agents ran a records check using the defendant's alias, but the effort turned up no new information.

In September 2002, agents used fingerprint technology to match the unknown thumbprints from the Texas identification card application with those of Green, whose thumbprints were on file with the FBI. Agents also compared a photograph of Green with the one on the application and determined they were the same person. That same month, agents retrieved Green's arrest records from Waller County, Texas.

In October 2002, agents learned and verified that Green was incarcerated in the Wisconsin Department of Corrections and had been there since 2000. In October 2003, agents received Green's booking photograph and fingerprint card from Wisconsin authorities. Thereafter, agents gathered the necessary documentation and sent Green's prints to the Immigration and Customs Enforcement ("ICE") forensic laboratory for comparison. In August 2004, the agents received confirmation from ICE of Green's identity.

In September 2004, a detainer was placed on Green at the Wisconsin facility where he was incarcerated. On November 16, 2004, the United States Attorney filed an application for writ of habeas corpus ad prosequendum, requesting that Green be brought before the United States District Court for the Southern District of Texas. On January 4, 2005, Green made his initial appearance in the district court.

On February 18, 2005, Green filed a motion to dismiss the indictment, arguing that the post-indictment delay violated his Sixth Amendment right to a speedy trial. On March 8, 2005, the district court denied Green's motion.

Following a stipulated bench trial in March 2005, Green was convicted and sentenced to one month in prison, to be served concurrently with an existing state court sentence and to be followed by three years of supervised release.

Green now appeals his judgment of conviction and sentence,

arguing that the district court erred in denying his motion to dismiss the indictment. Green contends that the post-indictment delay, from the issuance of the indictment in August 1998 to the filing of the detainer on Green in September 2004, violated his Sixth Amendment right to a speedy trial.

Green's speedy trial claim is controlled by the four-factor balancing test in <u>Barker v. Wingo</u>, 407 U.S. 514 (1972). Under that test, the court considers: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's diligence in asserting his Sixth Amendment right; and (4) the prejudice to the defendant caused by the delay. <u>United States v. Cardona</u>, 302 F.3d 494, 496 (5th Cir. 2002) (citing <u>Barker</u>, 407 U.S. at 530-33).

In <u>Doggett v. United States</u>, 505 U.S. 647 (1992), the Supreme Court clarified how the four factors are to be weighed and the burden each party carries. The threshold inquiry is whether the delay is long enough to trigger a speedy trial analysis. <u>United States v. Bergfeld</u>, 280 F.3d 486, 488 (5th Cir. 2002) (citing <u>Doggett</u>, 505 U.S. at 651-52). Generally, a post-accusation delay approaching one year is sufficient. <u>Id.</u> (citing <u>Doggett</u>, 505 U.S. at 652 n.1).

"If a court undertakes a full <u>Barker</u>-analysis, it evaluates the first three factors (delay-length; reason for it; diligence in asserting right) in order to determine whether prejudice will be presumed or whether actual prejudice must be shown." <u>United</u>

-4-

States v. Frye, 372 F.3d 729, 736 (5th Cir. 2004). "In all of this, courts do *not* engage in a rigid analysis, but engage in the 'functional analysis of the right in the particular context of the case.'" Id. (quoting Barker, 407 U.S. at 522).

In analyzing Green's Sixth Amendment claim, the district court recognized that it was required to engage in a full Barker-analysis because of the length of the post-indictment delay. See Tr. of Mot. Hr'g at 43, United States v. Green, No. H-98-CR-311 (S.D. Tex. Mar. 8, 2005). Green's counsel told the district court that Green was relying entirely on the presumption of prejudice for his claim. See id. at 4. This statement, along with the court's finding that there was absolutely no evidence of actual prejudice, required the court to balance the first three factors under Barker and Doggett to determine if prejudice would be presumed. See id. at 43-47.

In addressing the first two factors, the district court found that "the Defendant contributed to the problems significantly because he admittedly used false information and as a result he was indicted as a John Doe. Clearly, his efforts to prevent the Government from figuring out who he was contributed to the delay in the Government's figuring out who he was." Id. at 43. The court also found that "there were periods of time in which the Government had available to it the means of resolving that confusion that it did not avail itself of as early as it

might have done." Id. The court concluded "that there was a relatively short period of delay that is attributable to some degree of governmental negligence[,]" but attributed the "much longer period of delay . . . to a combination of the Defendant's efforts to hide his identity and the Government's failure, although they made attempts to find the Defendant, to locate him." Id. at 46. The court found that there was "certainly no degree of culpability [by the Government] that is higher than a low degree of negligence." Id. Finally, in addressing the third factor, the court found that Green had diligently asserted his constitutional right. Based on these factors, the court concluded that although "[a] combination of those factors makes this a relatively close case" on whether it should presume prejudice, it did not "see a basis for dismissing the indictment." Id. at 47.

Having reviewed the briefs, the district court's oral ruling, and the pertinent portions of the record, we find no errors of law or fact warranting reversal. Essentially for the reasons stated by the district court, we agree that the length of the delay attributable to the government's negligence, even when considered in light of the defendant's assertion of his right, is not sufficient for a presumption of prejudice. Cf. United States v. Serna-Villarreal, 352 F.3d 225, 232 & 233 n.5 (5th Cir. 2003), cert. denied, 541 U.S. 981 (2004) (stating that "this Court and

others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years" and noting that "[t]he portion of the post-indictment delay attributable to government negligence in <u>Doggett</u>, <u>Bergfeld</u>, and <u>Cardona</u>, was six years, five years, and five years, respectively").[1]  Accordingly, because Green relied solely on presumptive prejudice and because he cannot show actual prejudice, the judgment of the district court is affirmed.

AFFIRMED.

---

[1]  Although Green argues that this circuit's decision in <u>Serna-Villarreal</u> conflicts with the Supreme Court's decision in <u>Barker</u>, it is a well-established rule that one panel of this court may not overrule a prior panel's decision, absent an en banc or intervening Supreme Court decision.  <u>See</u> <u>United States v. Treft</u>, 447 F.3d 421, 425 (5th Cir.), <u>cert. denied</u>, 127 S. Ct. 555 (2006).  We therefore decline to consider this argument any further on appeal.